# In the United States Court of Federal Claims

No. 16-496T
(Filed: September 19, 2016)

|  |  |  |
|---|---|---|
| | ) | |
| THE NEW YORK AND | ) | |
| PRESBYTERIAN HOSPITAL, | ) | |
| | ) | Motion to Dismiss for Lack of |
| Plaintiff, | ) | Jurisdiction; RCFC 12(b)(1); Federal |
| | ) | Insurance Contributions Act ("FICA"); |
| v. | ) | Employer Indemnification; 26 U.S.C. |
| | ) | § 3102(b) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Maura B. Grinalds*, New York, NY, for plaintiff.  *Jonathan J. Lerner*, *Michael H. Gruenglas*, and *Robert L. Dunn*, New York, NY, and *Fred T. Goldberg, Jr.*, *B. John Williams*, and *Daniel W.J. Becker*, Washington, DC, of counsel.

*Matthew D. Lucey*, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, DC, with whom were *Caroline D. Ciraolo*, Acting Assistant Attorney General, and *David I. Pincus*, Chief, Court of Federal Claims Section, for defendant.

## OPINION GRANTING MOTION TO DISMISS

**FIRESTONE**, *Senior Judge*.

Pending before the court is defendant the United States' ("the government")

motion to dismiss this action filed by plaintiff The New York and Presbyterian Hospital

("the hospital").  The hospital filed this action to recover money the hospital paid to

medical residents to settle litigation in the United States District Court for the Southern

District of New York ("the district court") (S.D.N.Y. Case Nos. 13 Civ. 5414, 13 Civ.

5899).  In the district court consolidated action, the hospital was sued by medical

residents for fraud, breach of contract, unjust enrichment, and related claims in connection with the hospital's failure to file protective refund claims for the medical residents for Federal Insurance Contributions Act ("FICA") taxes that the hospital and its predecessor had withheld from the medical residents' pay from 1995 to 2001.  The hospital asserts in its complaint before this court that it is entitled to payment from the government for the amount it paid the medical residents under section 3102(b) of the Internal Revenue Code ("IRC"), 26 U.S.C. § 3102(b).

Section 3102(b) provides that "[e]very employer required so to deduct the [FICA] tax shall be liable for the payment of such tax, and shall be indemnified against the claims and demands of any person for the amount of any such payment made by such employer."  The hospital contends that section 3102(b) requires the government to reimburse the hospital for the payments it made to the medical residents as the means of "indemnifying" the hospital for collecting the FICA tax in the first instance.  Based on its reading of the statute, the hospital asserts that section 3102(b) is money-mandating and thus this court has jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a).

The government argues that this court does not have jurisdiction to hear the hospital's case on the grounds that section 3102(b) of the IRC is not a money-mandating statute and thus the case must be dismissed under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC").  According to the government, section 3102(b) is an immunity provision.  The government argues that the term "indemnified" in section 3102(b) is properly read to mean that employers are not liable to employees in the event an employee makes a claim against the employer in connection with the employer's

withholding of FICA taxes.  The government argues that this reading is compelled by

IRC section 7422, which states in relevant part that "[n]o suit or proceeding shall be

maintained in any court for the recovery of any internal revenue tax alleged to have been

erroneously or illegally assessed or collected . . . until a claim for refund or credit has

been duly filed with the [Internal Revenue Service ("IRS")] . . . ."  IRC § 7422(a).  The

government argues that by virtue of section 7422, no court has jurisdiction over a claim

by an employee for FICA taxes collected erroneously by an employer until the employee

taxpayer first files a claim with the IRS and thus no employer can ever face liability for

erroneously collecting FICA taxes.  The government also relies on a series of cases that

have held that section 3102(b) does not provide a private right of action by employees

against employers with regard to withholding taxes and thus employers are immune from

liability under section 3102(b) from claims by employees.  In this connection, the

government further argues that the hospital was not sued for erroneously withholding

FICA taxes but was instead sued in tort for the hospital's alleged wrongful actions in

connection with failing to inform the medical residents of their possible right to a tax

refund.  The government contends that section 3102(b) cannot be construed as mandating

payment by the government for damages paid to settle private tort claims.  For all of

these reasons, the government argues, section 3102(b) cannot serve as a basis for this

court to exercise jurisdiction under the Tucker Act.[1]  As discussed below, the court

---

[1] Because the court finds for the reasons discussed above that section 3102(b) is not money-mandating, the court does not reach the government's argument that the hospital's case must be

3

agrees with the government and thus the government's motion to dismiss under Rule 12(b)(1) is **GRANTED**.

## I.     STATUTORY AND FACTUAL BACKGROUND

FICA taxes for Social Security and Medicare are based on wages paid to employees.  *See* IRC §§ 3101, 3111.  There is an employee's share and an employer's share.  *See* IRC §§ 3101, 3111.  Generally, section 3102(a) requires an employer to deduct an employee's share of FICA taxes from the employee's wages.  As noted above, section 3102(b) provides that "[e]very employer required so to deduct the [FICA] tax shall be liable for the payment of such tax, and shall be indemnified against the claims and demands of any person for the amount of any such payment made by such employer."

The district court litigation between the hospital and the medical residents has its roots in the so-called student exception to FICA taxation in section 3121(b)(10) of the IRC.  Specifically, under section 3121(b)(10), FICA taxes do not apply to "service performed in the employ of . . . a school, college, or university . . . if such service is performed by a student who is enrolled and regularly attending classes at such school, college, or university."  IRC § 3121(b)(10) ("the student exception").  The IRS took the position that medical residents were not eligible for the student exception and required hospitals employing medical residents to withhold the employee share of FICA taxes

---

dismissed on the grounds that section 3102(b) is not money-mandating specifically for claims arising from tort actions filed against employers by employees.

from residents' paychecks and pay the withheld amounts and the employer share to the government.  Compl. ¶ 9; Def.'s Mot. to Dismiss ("MTD") 3.

For a number of years the scope of the student exception was subject to litigation. During that period, the IRS allowed employers to file "protective" refund claims to preserve claims for a refund of the employer and employee shares of FICA taxes. Compl. ¶¶ 14-16 (citing Treas. Reg. § 31.6402(a)-2(a)).  Medical residents were also free to file their own protective refund claims for the employee share of FICA taxes withheld from their pay.  Compl. ¶ 14 (citing Treas. Reg. § 31.6402(a)-2(a), (b)).

In 2004, the IRS adopted a regulation that generally excluded medical residents, as full-time employees, from the student exception for services provided after April 1, 2005. Compl. ¶ 12 (citing Treas. Reg. § 31.3121(b)(10)-2(d)(3); Student FICA Exception, 69 Fed. Reg. 8,604 (Feb. 25, 2004) (proposed rule)); *see also* Student FICA Exception, 69 Fed. Reg. 76,404 (Dec. 21, 2004) (final rule).[2]

On March 2, 2010, however, the IRS decided that while the issue of their student status was being debated, medical residents could qualify for the student exception for tax periods ending before April 1, 2005.  Thus, hospitals and residents who had filed protective refund claims for tax periods before April 1, 2005 would be able to obtain refunds of the FICA taxes withheld from residents' wages.  Compl. ¶ 13 (citing IRS to Honor Medical Resident FICA Refund Claims, I.R.S. News Release IR-2010-25 (Mar. 2,

---

[2] In *Mayo Foundation for Medical Education and Research v. United States*, 562 U.S. 44 (2011), the United States Supreme Court upheld the IRS's rule as generally excluding medical residents from the student exception.

2010)); Def.'s MTD 5 (citing *United States v. Mount Sinai Med. Ctr. of Florida, Inc.*, 486

F.3d 1248 (11th Cir. 2007); *Childers v. New York & Presbyterian Hosp.*, 36 F. Supp. 3d

292, 299 (S.D.N.Y. 2014)), Ex. 1 (copy of IRS's 2010 news release).  The underlying

dispute in this case stems from the hospital's decision not to file protective refund claims

for some of the medical residents working at the hospital.  Specifically, the hospital did

not file protective refund claims for the medical residents affiliated with Cornell

University.  Apparently, the hospital did file protective refund claims for medical

residents at the hospital who were affiliated with Columbia University.  Def.'s MTD 5;

*Childers*, 36 F. Supp. 3d at 300.

The medical residents from Cornell University filed suits against the hospital in

August 2013.  Compl. ¶ 20.  The cases were consolidated.  The residents alleged that

from January 1, 1995 through June 30, 2001, pursuant to a confidential agreement

between the hospital and the IRS that resolved an unrelated and undisclosed tax matter,

the hospital agreed not to file protective refund claims for the medical residents' share of

FICA taxes withheld from their pay or notify them to file their own protective refund

claims.  *Childers*, 36 F. Supp. 3d at 300.  The medical residents charged in their

complaints that the hospital's decision not to file protective refund claims on their behalf

amounted to fraud, constructive fraud, breach of fiduciary duty, negligent

misrepresentation, negligence, breach of contract, and unjust enrichment.  *Id.* at 298, 301;

*see also* Def.'s MTD 5-6, Exs. 2-3, 8.

The hospital moved to dismiss the district court litigation on the grounds that the

residents were, in effect, seeking a refund of the FICA taxes the hospital had withheld

from the residents' wages and that under IRC section 7422 the residents had to first file refund claims with the IRS.  *See Childers*, 36 F. Supp. 3d at 303.  Section 7422 states in relevant part that "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the [IRS] . . . ."

On June 23, 2014, the district court denied the hospital's motion to dismiss.  *See Childers*, 36 F. Supp. 3d at 292.  The district court held that section 7422 did not bar the medical residents' cases because the medical residents' claims did "not arise out of the Hospital's collection of taxes . . . but from later, independent actions and omissions, such as agreeing in the Settlement not to file protective refund claims on behalf of Plaintiffs, keeping the Settlement secret from Plaintiffs, not filing refund claims on behalf of Plaintiffs and not informing Plaintiffs that they should file refund claims for themselves." *Id.* at 303.  The district court then denied the hospital's request that the district court certify for immediate appeal whether section 7422 preempted the residents' actions.  *Id.* at 319.

On August 19, 2014, the hospital filed in the United States Court of Appeals for the Second Circuit a petition for a writ of mandamus to redress the district court's allegedly erroneous expansion of its jurisdiction.  Pet. for Mandamus 2 (Def.'s MTD Ex. 5).  The hospital argued that the district court lacked jurisdiction over the residents' claims on the grounds that the district court had ignored the plain language of section 7422.  *Id.* at 3-4, 13-14 (citing, among other authorities, *United States v. Clintwood*

*Elkhorn*, 553 U.S. 1 at 4, 7-9 (2008)). The hospital's mandamus petition was denied on October 22, 2014. *See* Def.'s MTD Ex. 6.

Thereafter, on October 24, 2014, the hospital filed a third-party complaint against the United States seeking "indemnification" under section 3102(b). Def.'s MTD 6-8, Ex. 7. The hospital's claim against the government was never resolved and on June 11, 2015, at the hospital's request, the district court dismissed without prejudice the hospital's third-party complaint against the government. *Id.*

The hospital did not continue to defend the litigation after its mandamus effort failed and instead decided to settle the medical residents' cases. On November 23, 2015, the district court granted final approval of an agreement between the medical residents and the hospital under which the hospital agreed to pay a total of $6,632,000 to settle with the medical residents. Def.'s Reply Ex. 2; *see also* Def.'s MTD 9, Ex. 8 (order granting preliminary approval). Under the settlement agreement, each medical resident's award was to be determined based on the amount of FICA taxes withheld from the resident's wages during the relevant time period[3] as a share of the amount of FICA taxes withheld from all of the residents in the settlement during the relevant period,[4] multiplied by the amount available in the settlement fund. Pl.'s Resp. Ex. B at ¶ 49.B (joint

---

[3] The settlement agreement defines the relevant period as January 1, 1995 to June 30, 2001, corresponding to the dates in the hospital's agreement with the IRS. Pl.'s Resp. Ex. B at ¶ 5.

[4] The settlement agreement defines the "Withheld Amount" as "the sum of all Social Security Tax and Medicare Tax withheld by Defendant from Class Members' wages during the Class Period, minus the amount of FICA refunded to Class Members . . . exclusive of statutory overpayment interest." Pl.'s Resp. Ex. B at ¶ 34.

stipulation of settlement and release).  The settlement agreement states that "[t]he Parties agree that Class Members' Settlement Awards can be appropriately characterized as a refund for the amount of FICA taxes previously withheld by the Hospital from the Class Members." *Id.* at ¶ 50.A.

## II.   PROCEDURAL HISTORY IN THIS COURT

The pending case was originally filed by the hospital in this court on June 10, 2015 (ECF No. 1 in Case No. 15-593T), before the hospital's claim against the United States in the district court litigation was dismissed.  The complaint stated that the hospital sought payment under the above-quoted "indemnified" language in section 3102(b).  On April 18, 2016, this court dismissed the hospital's complaint without prejudice for lack of jurisdiction pursuant to 28 U.S.C. § 1500 (ECF No. 28 in Case No. 15-593T), on the grounds that at the time the hospital filed the action on June 10, 2015, its third-party complaint against the government was still pending before the district court.

The hospital re-filed its complaint in the above-captioned case on April 20, 2016. The government filed the pending motion to dismiss the complaint on May 6, 2016.  Oral argument on the government's motion was heard on August 3, 2016.

## III.   LEGAL STANDARDS

This case comes before the court on the government's motion to dismiss for lack of jurisdiction pursuant to RCFC 12(b)(1).  "In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014) (citing *Cedars-Sinai*

*Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993)).  However, a party invoking this court's jurisdiction ultimately "has the burden of establishing jurisdiction by a preponderance of the evidence." *Fid. & Guar. Ins. Underwriters, Inc. v. United States*, 805 F.3d 1082, 1087 (Fed. Cir. 2015) (citing *Brandt v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)).  If a motion to dismiss for lack of jurisdiction challenges the jurisdictional facts alleged in the complaint, the court may consider relevant evidence outside the complaint in order to determine whether it has jurisdiction.  *Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014) (citing *Reynolds*, 846 F.2d at 747).

For the court to exercise jurisdiction under the Tucker Act with respect to a claim for money under a federal statute, the statute "must be such that [it] 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'"  *Roberts v. United States*, 745 F.3d 1158, 1162 (Fed. Cir. 2014) (citing *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003)).  The statute must "be reasonably amenable to the reading that it mandates a right of recovery in damages."  *Id.* (citing *White Mountain Apache Tribe*, 537 U.S. at 473).  The Supreme Court has further held that there must be an "explicit authorization" for payment when there are "strong indications that Congress did not intend to mandate money damages." *White Mountain Apache Tribe*, 537 U.S. at 478 (citing *Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 740 (1982); *United States v. Testan*, 424 U.S. 392, 399-402 (1976)).

## IV.    DISCUSSION

Section 3102(b) states that "[e]very employer required so to deduct the [FICA] tax shall be liable for the payment of such tax, and shall be indemnified against the claims and demands of any person for the amount of any such payment made by such employer."  According to the hospital, the word "indemnified" in section 3102(b) guarantees that employers will be reimbursed by the United States in the event that an employee "claims and demands . . .  the amount of any such [FICA tax] payment made by such employer."  The hospital argues that the payments it made to the medical residents were based on the amounts withheld by the hospital under FICA and thus the government must "indemnify" it for the settlement payments.  The hospital supports its position by arguing that the plain meaning of the word "indemnify" means to reimburse. The hospital relies on definitions from various dictionaries that existed at the time section 3102 was enacted in 1935,[5] including the 1910 and 1933 editions of Black's Law Dictionary, which defined "indemnify" to mean "to save harmless; to secure against loss or damage; to give security for the reimbursement of a person in case of an anticipated loss falling upon him. . . .  Also to make good; to compensate; to make reimbursement to one of a loss already incurred by him."  *Indemnify*, Black's Law Dictionary 949 (3d ed.

---

[5] Section 3102(b) was originally enacted in 1935 as section 802(a) of the Social Security Act, ch. 531, 49 Stat. 620, 636 (1935) ("Every employer required so to deduct the tax is hereby made liable for the payment of such tax, and is hereby indemnified against the claims and demands of any person for the amount of any such payment made by such employer.").  The provision was codified with the current language ("shall be indemnified") as section 1401(b) of the Internal Revenue Code of 1939, 53 Stat. 1, 175, and recodified as section 3102(b) in the Internal Revenue Code of 1954, 68A Stat. 1, 415.

1933) (Pl.'s Sur-Reply Ex. D); *Indemnify*, Black's Law Dictionary 949 (2d ed. 1910) (Pl.'s Sur-Reply Ex. E).  In addition, the hospital cites the current edition of Black's Law Dictionary and secondary definitions of "indemnify" in other dictionaries to the same effect and argues based on standard rules of statutory construction that if the language of the statute is unambiguous the court must apply its plain meaning and find that section 3102(b) is money mandating.  *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999); *Indemnify*, Black's Law Dictionary 886 (10th ed. 2014) ("1. To reimburse . . . for a loss suffered because of a third party's or one's own act or default; hold harmless."); *Indemnify*, Webster's New International Dictionary of the English Language 1147 (3d ed. 2002 rev.) (Def.'s Reply Ex. E) ("2: to make compensation to for incurred hurt or loss or damage . . . ."); *Indemnify*, Webster's New International Dictionary of the English Language 1147 (3d ed. 1966) (Def.'s Reply Ex. D) (same as the 2002 edition); *Indemnify*, Webster's New International Dictionary of the English Language 1262 (2d ed. 1942) (Def.'s Reply Ex. C) ("2. To make restitution or compensation to; reimburse; compensate; also, to make good (a loss)."); *Indemnify*, Webster's New International Dictionary of the English Language 1093 (1917) (Def.'s Reply Ex. B) ("2. To make restitution or compensation to, as for a loss, damage, etc.; to make whole; to reimburse; to compensate; also, to make good (a loss)."); *Indemnify*, Oxford English Dictionary 195 (1933) (Def.'s Reply Ex. F) ("2. To compensate . . . for loss suffered, expenses incurred, etc."); *see also Indemnity*, Oxford English Dictionary 195 (1933) ("3. Compensation for loss or damage incurred; indemnification. . . . .").

The hospital further argues that the government's contention that section 3102(b) only provides employers with immunity from liability should be rejected on the grounds that Congress has specified that employers shall not be liable when that was Congress' intent.  The hospital relies primarily on section 3403 of the IRC, which states that an "employer shall be liable for the payment of the [income] tax required to be deducted and withheld under this chapter, and *shall not be liable* to any person for the amount of any such payment."  IRC § 3403 (emphasis added).  The hospital argues that section 3403 demonstrates that Congress knew the difference in meaning between the words indemnify and immunity from liability and thus the court must find that the terms have different meanings and cannot be used interchangeably.  In support, the hospital cites the canon of statutory construction that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *Sebelius v. Cloer*, 133 S. Ct. 1886, 1894 (2013) (quoting *Bates v. United States*, 522 U.S. 23, 29-30 (1997)).

The government argues in its motion to dismiss that the phrase "shall be indemnified" in section 3102(b) is not properly read to require the government to reimburse an employer that is sued in connection with the collection of FICA taxes. Rather, the government argues the word "indemnity" is primarily defined by dictionaries to mean "immunity from liability" and further that reading indemnity to mean immunize is confirmed when the word "indemnified" in section 3102(b) is considered in the context of the entire tax code.

The government supports its reading of section 3102(b) with several dictionaries from when the statute was written that consistently define "indemnify" in the first definition to mean immunity from liability.  For example, the 1933 edition of Oxford English Dictionary defined "indemnify" to mean primarily "[t]o preserve, protect, or keep free from, secure against (any hurt, harm, or loss); to secure against legal responsibility for past or future actions or events; to give an indemnity to. . . . ." *Indemnify*, Oxford English Dictionary 195 (1933) (emphasis omitted) (Def.'s Reply Ex. F); *see also Indemnity*, Oxford English Dictionary 196 (1933) ("1. Security or protection against contingent hurt, damage, or loss; safety. . . .  2. A legal exemption from the penalties or liabilities incurred by any course of action. . . .").  Similarly, the 1917 and 1942 editions of Webster's New International Dictionary of the English Language defined the word "indemnify" first to mean "[t]o save harmless; to secure against loss or damage."  *Indemnify*, Webster's New International Dictionary of the English Language 1262 (2d ed. 1942) (Def.'s Reply Ex. C); *Indemnify*, Webster's New International Dictionary of the English Language 1093 (1917) (Def.'s Reply Ex. B).  In the third edition of Webster's New International Dictionary of the English Language, "indemnify" is also first defined to mean "1a: to secure or protect against hurt or loss or damage . . . b: to exempt from incurred penalties or liabilities . . . ," *Indemnify*, Webster's New International Dictionary of the English Language 1147 (3d ed. 2002 rev.) (Def.'s Reply Ex. E); *Indemnify*, Webster's New International Dictionary of the English Language 1147 (3d ed. 1966) (Def.'s Reply Ex. D) (same as the 2002 edition).

The government continues that its reading of "indemnify" in section 3102(b) to mean immunity from liability is also supported by many courts that have examined whether employees can sue their employer over withholding and payment of FICA taxes based on the language in section 3102(b).  In each of the below-cited cases, the court held that there is no private right of action for an employee to sue an employer over FICA taxes and that employers are immune from liability.  *See Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 65-69 (3d Cir. 2008); *McDonald v. S. Farm Bureau Life Ins. Co.*, 291 F.3d 718, 724-25 (11th Cir. 2002); *Childers*, 36 F. Supp. 3d at 302; *Glanville v. Dupar, Inc.*, 727 F. Supp. 2d 596, 602 (S.D. Tex. 2010); *Powell v. Carey Int'l, Inc.*, 514 F. Supp. 2d 1302 (S.D. Fla. 2007); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F. Supp. 2d 551 (D. Md. 2003); *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 62 F. Supp. 2d 878 (E.D.N.Y. 1999); *Salazar v. Brown*, 940 F. Supp. 160 (W.D. Mich. 1996); *DiGiovanni v. City of Rochester*, 680 F. Supp. 80 (W.D.N.Y. 1988)).[6]  The government explains that a holding that section 3102(b) allows for private actions against employers, and then authorizes suits by employers for reimbursement against the government, would turn the entire refund scheme on its head.  As discussed below, the government argues that IRC section 7422 makes plain that anyone challenging withholdings must first go to

---

[6] The government also argues that if there is any ambiguity as to whether section 3102(b) is an immunity provision and not money-mandating, the statute must be interpreted in a manner that does not waive sovereign immunity because waivers of sovereign immunity must be strictly construed.  Def.'s MTD 13 (citing *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33-37 (1992)); Def.'s Reply 10.  It is not necessary to reach this argument because the court finds the statute is unambiguously not money-mandating.

the IRS for relief and thus there should be no occasion for the government to have to reimburse an employer in connection with withholding taxes.

The government relies on section 7422, which precludes "any court" from hearing a case seeking the recovery of taxes assessed or collected until the plaintiff has made a claim with the IRS.  In this way, section 7422 works in tandem with section 3102(b) by protecting employers from suits by employees while providing employees with an avenue for relief before the IRS.

The court agrees with the government's reading of section 3102(b) and finds that section 3102(b) is an immunity provision and is thus not money mandating.  To begin, the court agrees with the government that the word "indemnified" does not necessarily mean a right to "reimbursement."  Rather, as discussed above, the court finds that the better reading of the word comes from the primary definitions in the above-cited dictionaries, which nearly consistently defined "indemnify" first to mean an exemption from liability.  *See, e.g.*, *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 410 (2011) (adopting a word's "primary meaning" (citing *Muscarello v. United States*, 524 U.S. 125, 130, 128 (1998)).

Second, to the extent there is any doubt as to Congress' intent, the court agrees with the government that reading section 3102(b) as an immunity provision and not as a reimbursement provision is confirmed by section 7422, which precludes any court from considering an employee's claim for recovery of FICA taxes before the employee files a claim with the IRS.  The court accepts that the hospital's reading of section 3102(b) would turn the refund scheme on its head.  In this connection, the court agrees with the

numerous decisions that have read section 3102(b) as not authorizing a private right of action by employees to sue employers over the withholding and payment of FICA taxes.

In particular, the court agrees with the Eleventh and Third Circuits, which have expressly rejected employees' arguments that section 3102(b)'s indemnification provision implies a private right of action by an employee against an employer.  The Eleventh Circuit found that that the plaintiff's contention "that Congress would not have explicitly indemnified employers if it did not assume that employees would have been able to bring lawsuits under FICA . . . lacks any textual support."  *McDonald*, 291 F.3d at 725.  Rather, the Eleventh Circuit found that the language at issue "protects employers who properly deduct FICA taxes from an employee's wages against claims by employees that the money withheld and used to pay the tax should have been paid to the employee as part of his salary."  *Id.*  The Eleventh Circuit further noted that "[b]ecause Congress requires employers to withhold the FICA contribution and pay the excise tax, it included the indemnification provision to protect employers from lawsuits by employees who do not want their salaries reduced in compliance with FICA."  *Id.*  As the Eleventh Circuit explained, an alternative reading of the statute would be inconsistent with the legislative and regulatory procedures for employees and employers seeking relief.  *Id.*

Similarly, in *Umland v. PLANCO Financial Services, Inc.*, 542 F.3d at 65-67, the Third Circuit echoed the *McDonald* holding and further noted that because the plaintiff's breach of contract claims were based on alleged FICA violations, "if we were to read FICA's provisions into every employment contract, we would contradict Congress's decision not to include expressly a private right of action and our belief that Congress did

17

not intend to imply a private right of action either." *Id.* at 67.  In addition, the Third

Circuit found that section 7422 preempted the plaintiff's unjust enrichment claim against

the employer, noting that "[t]his result protects the integrity of the administrative scheme

for tax refunds that Congress has approved and that the IRS has implemented." *Id.* at 68

(citing *Brennan v. Sw. Airlines Co.*, 134 F.3d 1405, 1411 (9th Cir. 1998)).  These cases

and the others cited by the government make plain that section 3102(b) is an immunity

provision because no other reading is consistent with Congress' desire to preclude

employees from suing their employer in connection with the employer's withholding of

FICA taxes.  The tax code in section 7422 requires employees to instead seek recovery

from the government.  *See Clintwood Elkhorn*, 553 U.S. at 6-7, 11 (holding that

Congress' use of the word "any" in section 7422 cannot be ignored and that courts do not

have jurisdiction to hear refund suits before taxpayers go to the IRS, stating "[f]ive

'any's' in one sentence and it begins to seem that Congress meant the statute to have

expansive reach," and "Congress has indeed established a detailed refund scheme that

subjects complaining taxpayers to various requirements before they can bring suit").

The court understands that the district court in *Childers* distinguished the

reasoning in cases dismissing claims based on section 7422 by finding that the medical

residents in the district court litigation had stated tort claims and thus the case could

proceed.[7]  The court is also aware that other district courts have read section 3102(b) to

---

[7] The court recognizes that the district court approved a settlement based on some percentage of
FICA taxes the hospital had withheld from the medical residents' salaries and had paid to the
IRS despite the language in section 7422.  However, the fact that the hospital agreed to a
settlement and decided not to litigate the district court cases, and then file an appeal based on

imply a private right of action.  *See Ford v. Troyer*, 25 F. Supp. 2d 723, 726 (E.D. La. 1998); *Sanchez v. Overmyer*, 845 F. Supp. 1178, 1181-82 (N.D. Ohio 1993).  Although this court does not accept the *Sanchez* or *Ford* courts' reasoning, it is important to note that neither case involved a claim for money from the employer.  *See Ford*, 25 F. Supp. 2d at 725; *Sanchez*, 845 F. Supp. at 1182.  The *Sanchez* court expressly did not reach the question of whether section 3102(b) establishes a private cause of action for monetary damages under FICA.  *Sanchez*, 845 F. Supp. at 1182.

Moreover, the reasoning of *Ford*, *Sanchez*, and *Childers* has been rejected in several cases and this court elects to follow those precedents.  *See Chalfin v. St. Joseph's Healthcare Sys.*, 629 F. App'x 367, 368-69 (3d Cir. 2015) (finding that the plaintiffs' claim for negligent failure to obtain tax refunds was, in essence, a lawsuit for a tax refund requiring exhaustion of administrative remedies under section 7422); *Reuss v. Orlando Health, Inc.*, 140 F. Supp. 3d 1299, 1308-09 (M.D. Fla. 2015) (finding that the employer had no fiduciary duty to file protective FICA tax refund claim and that the claim was, "at its core, a claim for a tax refund and is therefore preempted by 26 U.S.C. § 7422 which provides for civil actions for tax refunds"); *see also Glanville*, 727 F. Supp. at 602 (following the Eleventh Circuit's reasoning in *McDonald* and finding no implied private

---

section 7422 if it had lost on the merits, does not mean that the hospital's settlement shows that there is a reason to read section 3102(b) as a reimbursement provision.  Regardless of how the settlement was characterized, the district court did not have jurisdiction to refund FICA taxes to the medical residents for the reasons discussed above.

right of action under FICA); *Berger v. AXA Network, LLC*, No. 03 C 125, 2003 WL 21530370, at *4 (N.D. Ill. July 7, 2003) (same).

The court also finds the hospital's reliance on other cases which interpret the word "indemnify" to support its reading of section 3102(b) unpersuasive.  Pl.'s Resp. 18-19 (citing *Indian Harbor Ins. Co. v. United States*, 704 F.3d 949, 958 (Fed. Cir. 2013); *Gro-Green Prods., Inc. v. United States*, 3 Cl. Ct. 639, 643 (1983); *Black Leaf Prods. Co. v. United States*, 4 Cl. Ct. 307 (1984); *Richmond Am. Homes of Colo., Inc. v. United States*, 75 Fed. Cl. 376, 385 (2007); *Sweet v. United States*, 53 Fed. Cl. 208, 213 (2002); *Am. Int'l Specialty Lines Ins. Co. v. United States*, No. 05-1020, 2008 WL 1990859, at *23 (Fed. Cl. Jan. 31, 2008)).  None are tax cases and each deals with a specific statutory scheme that contemplated government payments.  In *Indian Harbor Insurance Co. v. United States*, 704 F.3d at 951, the Federal Circuit considered a statute requiring the Secretary of Defense to "hold harmless, defend, and indemnify in full [subsequent owners of former military bases] . . . from and against any suit, claim, demand or action, liability, judgment, cost or other fee arising out of any claim for personal injury or property damage" arising from environmental contamination.  In that case, unlike in this case, the statute expressly referred to making "indemnification payments."  *See* National Defense Authorization Act of 1993, Pub. L. No. 102-484, Div. A, Title IU, § 330, 106 Stat. 2315, 2371 (1992), amended by Pub. L. No. 103-160, Div. A, Title X, § 1002, 107 Stat. 1547, 1745 (1993).  Also, the statute specified who was responsible for indemnification, a time limitation for claims, and other conditions such as an administrative process a claimant needed to follow.  *See id.*; *Indian Harbor Ins. Co. v.*

*United States*, 100 Fed. Cl. 239, 243 (2011); *see also Richmond Am. Homes of Colo.*, 75 Fed. Cl. at 385; *Am. Int'l Specialty Lines Ins.*, 2008 WL 1990859, at *23.  Similarly, in *Gro-Green Products, Inc. v. United States*, 3 Cl. Ct. at 643, and *Black Leaf Products Co. v. United States*, 4 Cl. Ct. at 308-10, the Claims Court found that plaintiffs that had followed a statutorily mandated process were entitled to damages under section 15 of the Federal Insecticide, Fungicide, and Rodenticide Act, which requires the Administrator of the EPA to "make an indemnity payment" to qualified persons under certain conditions. Finally, in *Sweet v. United States*, 53 Fed. Cl. at 213, this court found that plaintiffs were entitled to reimbursement of certain costs under an express agreement with the government executed pursuant to the Atomic Energy Act of 1954, Pub. L. No. 83-703, 68 Stat. 919 (1954), and the Price-Anderson Act, Pub. L. No. 85-744, 72 Stat. 837 (1958). None of these cases involve the statutory scheme for payments established in the tax code, under which section 7422 ensures that all claims related to withheld or paid tax be first presented to the IRS.  *See Clintwood Elkhorn*, 553 U.S. at 11.

Finally, the court has considered and rejects the hospital's contention that the court should read section 3102(b) as a reimbursement provision rather than an immunity provision because in other sections of the tax code Congress expressly stated that employers are "not . . . liable" when collecting a tax for the IRS.  Specifically, the hospital relies on IRC section 3403, which states with regard to income tax withholding that an employer required to withhold income tax from wages "shall not be liable to any person for the amount of any such payment."

The government correctly argues that the use of different terms in section 3102(b) and section 3403 does not mean that the terms should be construed differently in this case.  The government explains that use of the phrase "shall not be liable" evolved from earlier tax code provisions, demonstrating that "indemnity" and "shall not be liable" were used to mean the same thing.  The government explains that this is clear from the IRC section relating to employer withholding of railroad retirement taxes in section 3202(b).  Section 3202(b) uses both "indemnified" and "not . . . liable" in the same provision to mean the same thing.  *See* IRC § 3202(b) ("(b)Indemnification of employer.--Every employer required under subsection (a) to deduct the [railroad retirement] tax shall be liable for the payment of such tax and shall not be liable to any person for the amount of any such payment.").

It is generally true that "[d]ifferent words used in the same, or a similar, statute are assigned different meanings whenever possible."  Norman Singer & Shambie Singer, Each word given effect, 2A Sutherland Statutory Construction § 46:6 (7th ed.).  However, in this case, the court agrees with the government that in the various withholding provisions Congress used the terms interchangeably.  Put another way, it is apparent that Congress did not intend for the terms "indemnified" and "not . . . liable" to have different meanings.  The correctness of the government's position is most clear from section 3202(b), which relates to employer withholding of railroad retirement taxes.  Section 3202(b) was enacted two years after section 3102(b) and states in the section

entitled "[i]ndemnification of employer," that the employer "shall not be liable."[8]

Section 3202(b) demonstrates that Congress considered the term "indemnified" to mean

"not liable."  In view of the foregoing, the court has no reason to read section 3403,

regarding employer liability for withholding of income tax, which was enacted in 1943

and uses the words "shall not be liable," to mean that Congress intended to protect

employers from liability only when Congress used certain words.[9]  Rather, the court

accepts that Congress used "indemnify" and "shall not be liable" to mean the same

---

[8] Section 3202(b), regarding withholding of railroad retirement taxes, dates back to a 1935 statute which provided that "[e]very employer required so to deduct the tax is hereby made liable for the payment of such tax and is hereby indemnified against the claims and demands of any person for the amount of any such payment made by such employer."  Carriers and Employees Tax Act of 1935, Pub. L. No. 74-400 § 3(a), ch. 813, 49 Stat. 974, 975; *see also* Railroad Retirement Act of 1935, ch. 812, 49 Stat. 967 (establishing a retirement system for railroad employees subject to the Interstate Commerce Act); Railroad Retirement Act of 1934, ch. 868, 48 Stat. 1283 (found to be unconstitutional in *R.R. Ret. Bd. v. Alton R. Co.*, 295 U.S. 330 (1935)). After the Carriers and Employees Tax Act of 1935 was found to be unconstitutional, *see Alton R. Co. v. R.R. Ret. Bd.*, 16 F. Supp. 955, 959 (D.D.C. 1936), Congress replaced the statute with Carriers Taxing Act of 1937, Pub. L. No. 75-174 §2(a), 50 Stat. 435, 437 (1937), which included the current language ("shall not be liable") in section 2(a).  The provision was eventually codified as section 1501(b) in the Internal Revenue Code of 1939, 53 Stat. 1, 179, and recodified as section 3202(b) in the Internal Revenue Code of 1954, 68A Stat. 1, 431.

[9] Section 3403, regarding withholding of income taxes, dates back to the Tariff of 1913, ch. 16, 38 Stat. 114, 170, which made third parties personally liable for withholding income tax at the source.  Section 9(b) of the Revenue Act of 1916, ch. 463, 39 Stat. 756, 763-764, provided that third parties required to withhold income tax at the source were "hereby indemnified against every . . . demand whatsoever for all payments which they shall make in pursuance and by virtue of" the income tax statute.  In 1917, Congress amended this provision to require withholding of income tax at the source (i.e.by employers) only for nonresident aliens.  *See* War Revenue Act § 1205, ch. 63, 40 Stat. 300, 332.  The current income tax withholding requirement and immunizing language ("shall not be liable to any person for the amount of any such payment") appeared in section 1623 of the Internal Revenue Code of 1939, as amended by the Revenue Act of 1942, ch. 619, 56 Stat. 798, 891, and the Current Tax Payment Act of 1943, ch. 120, 57 Stat. 126, 137.  The provision was then recodified as section 3403 in the Internal Revenue Code of 1954, 68A Stat. 1, 469.

thing.[10]  The court agrees with the government section 3102(b) is thus an immunity provision and that a contrary reading would undermine the statutory refund scheme contrary to Congress' intent.

**V.      CONCLUSION**

For the reasons above, the government's motion to dismiss the complaint pursuant to RCFC 12(b)(1) is **GRANTED**.  The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**


s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge

---

[10] Because the court concludes that section 3102(b) is not money-mandating, for the reasons stated, it is not necessary to consider the government's contention that among the additional reasons that section 3102(b) is not money-mandating is that it does not establish a process or even identify the government as the liable entity by its terms.  Although the court agrees that these arguments support the court's finding that section 3102(b) is not money-mandating, the court's reasoning rests on its construction of the word "indemnified."