# In the United States Court of Federal Claims

|  |  |
|---|---|
| THE NEW YORK AND PRESBYTERIAN HOSPITAL, | No. 16-cv-00496 |
| Plaintiff, | Filed: February 17, 2020 |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

*Boris Bershteyn*, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, argued for Plaintiff. With him on the briefs were *Maura Barry Grinalds*, *Jonathan J. Lerner*, *Mollie Kornreich*, New York, NY, and *Fred T. Goldberg, Jr.*, *Sylvia O. Tsakos*, Washington, D.C.

*Matthew D. Lucey*, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C. for Defendant.  With him on the briefs were *Richard E. Zuckerman*, Principal Deputy Assistant Attorney General, Tax Division, *David I. Pincus*, Chief, Court of Federal Claims Section, United States Department of Justice, Washington, D.C.

## MEMORANDUM AND ORDER

Pending before the Court are the parties' cross-motions for summary judgment.  The Plaintiff, New York and Presbyterian Hospital (Hospital), argues it is entitled to indemnification from the United States pursuant to section 3102(b) of the Internal Revenue Code (I.R.C.).  Specifically, the Hospital seeks indemnification for a settlement of claims asserted by former medical residents (Residents) against the Hospital in another case for the amount of Federal Insurance Contributions Act (FICA) taxes the Hospital previously deducted and paid to the United States on the Residents' behalf.  *See generally* The New York and Presbyterian Hospital's Motion for Summary Judgment and Memorandum of Law in Support thereof (ECF No. 49) (Pl. Mot.); The New York and Presbyterian Hospital's Opposition to Defendant's Cross-Motion for Summary

1

Judgment (ECF No. 53) (Pl. Resp.); The New York and Presbyterian Hospital's Reply in Support of Its Motion for Summary Judgment (ECF No. 57) (Pl. Reply).  The Hospital argues that indemnification is mandated by the plain language of the statute.  The Government contends that the Hospital is not entitled to reimbursement for payment made pursuant to a settlement agreement between the Hospital and its former Residents because the Residents' suit was not a "claim or demand" for a FICA tax refund.  *See generally* Defendant's Cross-Motion for Summary Judgment Brief in Support of Cross-Motion for Summary Judgment (ECF No. 50) (Def. Mot.); Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment (ECF No. 52) (Def. Resp.); Defendant's Reply in Support of Defendant's Cross-Motion for Summary Judgment (ECF No. 58) (Def. Reply).

For the reasons stated below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** the Government's Cross-Motion for Summary Judgment.

## BACKGROUND

I. Events Leading to the Residents' Suit

The Federal Insurance Contributions Act, I.R.C. §§ 3101-3128 (2012), establishes a tax that is assessed by the Government based on wages paid to workers, and the money collected from the FICA tax is used to fund Social Security and Medicare.  *See* Pl. Mot. Ex. 2F (IRS Publication on Questions and Answers about Medical Resident FICA Refund Claims (Oct. 14, 2010)) at A130.[1]  Pursuant to the Act, an employer withholds a percentage of an employee's wages from the

---

[1]     Plaintiff's Appendix to its Motion for Summary Judgment Consists of the Declaration of Richard Einwechter, and the Declaration of Maura Barry Grinalds, which Plaintiff identifies as exhibit 1 and exhibit 2 respectively.  The Declaration of Richard Einwechter is accompanied by an "Exhibit A."  The Declaration of Maura Barry Grinalds is accompanied by an Exhibits A through T.  Throughout this opinion, the Court will refer to the exhibit in the Einwechter declaration as "Pl. Mot. Ex. 1(A)."  Exhibits accompanying the Grinalds declaration are referenced as "Pl. Mot. Exs. 2(A-T)."  These exhibits are consecutively paginated A1-A412, and the Court refers to these page numbers in its pin cites.

employee's paycheck based on the applicable FICA wage rate. *See id.* §§ 3101 (Tax on Employees), 3111 (Tax on Employers). The money withheld from the employee's paycheck is then paid to the Government, making it, in essence, a tax paid by the employee. *See id.* § 3102(a). At the same time, the employer itself pays a FICA "excise tax" that is equal in amount to the percentage wage rate paid by the employee. *Id.* § 3111(a). In a traditional employer-employee relationship, therefore, the employee pays half of the total FICA tax owed and the employer pays the other half.

However, under section 3121(b)(10), FICA taxes do not apply to "service performed in the employ of . . . a school, college, or university . . . if such service is performed by a student who is enrolled and regularly attending classes at such school, college, or university." I.R.C. § 3121(b)(10) ("the student exception"); Treas. Reg. § 31.3121(b)(10)–2(d). There was a long running controversy as to whether medical residents were eligible for the student exception. During that period, the IRS allowed employers to file "protective" refund claims to preserve claims for a refund of the employer and employee shares of FICA taxes. *See* Complaint (ECF No. 1) (Compl.) ¶¶ 14-16 (citing Treas. Reg. § 31.6402(a)–2(a)). Medical residents were also free to file

---

Defendant filed an appendix to its Cross Motion for Summary Judgment and an appendix for its Response to Plaintiff's Motion for Summary Judgment. Throughout this opinion, the Court will refer to the exhibits contained within the appendix accompanying Defendant's Cross-Motion for Summary Judgment as "Def. Mot. Exs. (1-11)" and the appendix accompanying Defendant's Response as "Def. Resp. Exs. (1-2)." The exhibits attached to Defendant's Cross-Motion for Summary Judgment are consecutively paginated App. 1-App. 291 and the exhibits attached to Defendant's Response are consecutively paginated App. 1- App. 95, and the Court will refer to these page numbers in its pin cites.

Finally, the parties have submitted some duplicate exhibits. *Compare* Def. Mot. Ex. 2 *with* Pl. Mot. Ex. 2A (*Childers* Complaint); *compare* Def. Mot. Ex. 3 *with* Pl. Mot. 2B (*Simon* Complaint); *compare* Def. Mot. Ex. 4 *with* Pl. Mot. Ex. 2R (Hospital's Motion to Dismiss filed in *Childers*); *compare* Def. Mot. Ex. 8 *with* Pl. Mot. Ex. 2O (Order & J. in *Childers*). In the case of a duplicative exhibit, the Court will cite to the exhibit contained in the appendix accompanying Plaintiff's Motion for Summary Judgment.

their own protective refund claims for the employee share of FICA taxes withheld from their pay. Compl. ¶ 14 (citing Treas. Reg. § 31.6402(a)–2(a), (b)).

The Hospital, a not-for-profit organization under section 501(c)(3), and its predecessor by merger, employed medical residents and fellows enrolled in Accreditation Council for Graduate Medical Education at what is now known as the Hospital's Weill Cornell Campus.  Pl. Mot. Ex. 1 at A1-2 (¶¶ 2-3); *see also* Answer (ECF No. 34) ¶ 3.

In 1999, the Hospital and the IRS entered into a Closing Agreement[2] whereby the Hospital agreed not to file refund claims before June 30, 2001 for any year for FICA taxes paid by and on behalf of the Residents in exchange for settling certain tax issues not relevant here.  *See Childers v. N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 300 (S.D.N.Y. 2014).  The Hospital did not seek or obtain the Residents' consent prior to entering into the Closing Agreement, nor did the Hospital notify the Residents that they could file their own refund claims.  *Id.*

In 2004, the Treasury Department issued a regulation barring medical residents from invoking the student exemption after March 31, 2005.  Treas. Reg. § 31.3121(b)(10)–2(d)(3)(i). However, on March 2, 2010, the IRS reversed course and issued guidance stating that hospitals and residents could obtain FICA tax refunds, but only if they had filed protective refund claims for tax periods before April 1, 2005.  Pl. Mot. Exs. 2D (I.R.S. News Release IR-2010-25 (Mar. 2, 2010)), 2E (I.R.S. Publication 4843-A (May 2010)), 2F (IRS Publication on Questions and Answers about Medical Resident FICA Refund Claims (Oct. 14, 2010)); *see also* Answer ¶ 13.

---

[2] A closing agreement is an agreement between a taxpayer and the IRS that resolves with finality the tax liability of a person or entity for a tax period or periods.  *See* I.R.C. § 7121.  Defendant does not argue that the Hospital's present action for indemnification violates the parties' settlement agreement.

However, in accordance with its Closing Agreement with the IRS, the Hospital did not file protective claims on behalf of the medical residents affiliated with Cornell University.[3]

II. Residents' Southern District of New York Suit

Upon discovering that they could not receive refunds for the FICA tax that the Hospital had previously withheld, on August 2, 2013, a group of former Cornell Residents (the "Childers Plaintiffs"), brought an action against the Hospital in the United States District Court for the Southern District of New York for: (1) fraud; (2) constructive fraud; (3) breach of fiduciary duty; (4) negligent misrepresentation; (5) negligence; (6) breach of contract; and (7) unjust enrichment. *See* Pl. Mot. Ex. 2A (Class Action Complaint in *Childers v. N.Y. & Presbyterian Hosp.*, 1:13-cv-05414-LGS (S.D.N.Y. Aug. 2, 2013) (ECF No. 1)) (*Childers* Compl.) at A69-74 (¶¶ 46-76). On August 21, 2013, another group of former Cornell Residents (the "Simon Plaintiffs") brought the second action against the Hospital for (1) breach of fiduciary duty and (2) unjust enrichment. *Id.* Ex. 2B (Class Action Complaint in *Simon v. N.Y. & Presbyterian Hosp*., 1:13-cv- 05899-LGS (S.D.N.Y. Aug. 21, 2013) (ECF No. 1)) (*Simon* Compl.) at A93-94 (¶¶ 74-82). On October 9, 2013, the two cases were consolidated for pre-trial purposes. *Childers*, 36 F. Supp. 3d at 301; Pl. Mot. Ex. 2C (Consolidated Am. Complaint, *Simon*, 1:13-cv-05899-LGS (S.D.N.Y. Oct. 3, 2014) (ECF No. 67)) (Consolidated Am. Compl.). The Residents alleged that the Hospital made the decision not to seek refunds for their residents pursuant to the Hospital's Closing Agreement with the IRS. Consolidated Am. Compl. at A107 (¶ 45). The Residents admitted in their suit that they did not take action to file individual refund claims on their own behalf for the FICA taxes they sought to recover from the Hospital. *See Childers* Compl. at A60, A63 (¶¶ 7, 21); *Simon* Compl. at A78-79, A88 (¶¶ 3, 47); Consolidated Am. Compl. at A99 (¶ 6). As relief, the Residents sought

---

[3] The Hospital did file protective refund claims for medical residents at the Hospital who were affiliated with Columbia University. *Childers*, 36 F. Supp. 3d at 300.

damages in the amount of the FICA tax withheld by the Hospital for the period at issue. *See* Pl. Mot. Exs. 2L at A320 (Pls. Initial Disclosures, *Childers*, 1:13-cv- 5414-LGS (S.D.N.Y. Oct. 31, 2013) (*Childers* Initial Disclosures)), 2M at A326-28 (Pls. Initial Disclosures, *Simon*, 1:13-cv-05899-LGS (S.D.N.Y. Oct. 31, 2013) (*Simon* Initial Disclosures)); *see also* Pl. Mot. Ex. 2K (Mem. of Law in Support of the United States of America's Mot. to Dismiss, *Simon*, 1:13-cv-05899- LGS (S.D.N.Y. Jan. 20, 2015), ECF No. 85).

The Hospital moved to dismiss in the district court, arguing that the Residents' suit was a disguised tax refund suit that needed to be filed against the Government pursuant to Internal Revenue Code § 7422. Pl. Mot. Ex. 2R (Hospital's Mem. of Law in Support of its Mot. to Dismiss, *Childers*, 1:13-cv-05414-LGS (S.D.N.Y. Oct. 31, 2013) (ECF No. 21)) at A385-93. Alternatively, the Hospital argued that Plaintiffs failed to state any cognizable claim (*id.* at A394-403) and that the Residents' claims were time-barred (*id.* at A404-06).

The district court denied the motion to dismiss with respect to each of the Residents' claims, aside from the Residents' breach of contract claims. *Childers*, 36 F. Supp. 3d at 315. Specifically, the court held that section 7422 did not bar the Residents' claims because the Residents' claims did "not arise out of the Hospital's collection of taxes . . . but from later, independent actions and omissions, such as agreeing in the Settlement not to file protective refund claims on behalf of Plaintiffs, keeping the Settlement secret from Plaintiffs, not filing refund claims on behalf of Plaintiffs and not informing Plaintiffs that they should file refund claims for themselves." *Childers*, 36 F. Supp. 3d at 303. Moreover, the Residents were not seeking to hold the "Hospital liable for any action that the IRS required the Hospital to take, or that the Hospital reasonably could have believed it was required to take. *Id.* at 303-04. Instead, Plaintiffs seek to hold the Hospital liable for completely distinct allegedly unlawful conduct." *Id.* at 304. The

district court also found that "Plaintiffs are not seeking to recover the FICA taxes withheld, but the amount by which the Hospital benefited at Plaintiffs' expense by entering into the Settlement." *Id.* at 305.

The Hospital then sought reconsideration and certification for interlocutory appeal of the district court's orders denying its motion to dismiss, which the court summarily denied.  *Id.* at 317-20.  In its supplemental opinion, the district court responded to the Hospital's arguments arguing that the court failed to recognize the jurisdictional bar set by section 7422 stating, "the Hospital's alleged wrongdoing was not its decision to refrain from filing FICA refund claims in the first instance, but its decision to enter into the 1999 tax settlement with the IRS . . . thereby gaining valuable consideration in exchange for—in effect—compromising Plaintiffs' refund claims."  *Id.* at 317-18.

On August 19, 2014, the Hospital filed in the United States Court of Appeals for the Second Circuit (Second Circuit) a petition for a writ of mandamus to redress the district court's allegedly erroneous expansion of its jurisdiction.  Pl. Mot. Ex. 2H (The Hospital's Petition for a Writ of Mandamus, *In re the N.Y. & Presbyterian Hosp.*, No. 14-2958 (2d Cir. Aug. 19, 2014) (ECF No. 1-1)) (Pet. for Mandamus).  The Hospital argued that the district court lacked jurisdiction over the Residents' claims on the grounds that the court had ignored the plain language of section 7422. Pet. for Mandamus at A157-58, A167-68 (citing, among other authorities, *United States v. Clintwood Elkhorn*, 553 U.S. 1, 4, 7, 9 (2008)).  The Hospital asked the Government if it wished to join the petition, but the Government declined.  *See* Pl. Mot. Ex. 2T (E-mail from B. John Williams Jr. to Gilbert S. Rothenberg dated August 27, 2014) (Williams E-mail).  The Second Circuit denied the Hospital's mandamus petition on October 22, 2014.  *See* Pl. Mot. Ex. 2I (Order denying the Hospital's Petitions for a Writ of Mandamus, *In re the N.Y. & Presbyterian Hosp.*,

No. 14-2958 (2d Cir. Oct. 22, 2014), (ECF No. 21)).

Thereafter, on October 24, 2014, the Hospital filed a third-party complaint in the district court against the United States seeking "indemnification" under section 3102(b).  *See* Pl. Mot. Ex. 2J (Third Party Complaint, *Simon*, 1:13-cv-05899-LGS (S.D.N.Y. Oct. 24, 2014) (ECF No. 72)) (Third Party Compl.) at A297 (¶¶ 46-47).  The Government moved to dismiss the third-party complaint, contending that, *inter alia*, the district court lacked subject-matter jurisdiction because section 3102(b) did not waive sovereign immunity.  *See* Pl. Mot. Ex. 2K (Mem. of Law in Support of the Government's Mot. to Dismiss, *Simon*, 1:13-cv-05899-LGS (S.D.N.Y. Jan. 20, 2015) (ECF No. 85)) at A308-13.  Alternatively, the Government argued that, even if the court did have jurisdiction, the Government was nevertheless still not liable to the Hospital.  *See id.* at A313-16.

While the Government's motion to dismiss was pending, the Hospital entered into mediation with the Residents.  The Hospital invited the Government to participate in the mediation, but the Government declined.  *See* Pl. Mot. Ex. 2N (E-mail from Monica Folch to Robert Dunn, copying Maura Barry Grinalds, dated March 23, 2015) (Folch E-mail).  The district court then stayed discovery; and, on May 15, 2015, the Hospital and the named plaintiffs in *Childers* and *Simon* entered into a proposed settlement agreement providing certain monetary relief for the medical resident class members.  Def. Mot. Ex. 5 (Unexecuted Joint Stipulation of Settlement & Release, *Childers*, No. 13-5414 & *Simon*, No. 13-5899, May 15, 2015 (ECF No. 107-1)); Def. Mot. Ex. 6 (Memorandum of Law in Support of Proposed Settlement, *Childers*, No 13-5414, May 15, 2015 (ECF No. 106)); Def. Mot. Ex. 7 (Brinckerhoff Declaration, *Childers*, No. 13-5414, May 15, 2015 (ECF No. 107)).

On June 11, 2015, prior to the district court's acceptance of the proposed settlement, the Hospital voluntarily dismissed its third-party claim against the Government for indemnification.

*See* Notice of Voluntary Dismissal, *Childers*, No. 13-cv-5414-LGS (S.D.N.Y. June 11, 2015) (ECF No. 114).  On July 6, 2015, the district court preliminarily approved the proposed Settlement Agreement and suspended all proceedings except those necessary to carry out the settlement.  *See* Order, *Childers*, No. 13-cv-5414 (S.D.N.Y. July 6, 2015) (ECF No. 119).

On November 23, 2015, after a fairness hearing conducted pursuant to Rule 23 of the Federal Rules of Civil Procedure, the district court issued an Order approving the class action settlement, including the approval of class certification and attorneys' fees awards.  Its Order recognized that the Residents' claims "could reasonably be characterized as seeking a tax refund." Pl. Mot. Ex. 2O (Order & Judgment, *Childers*, 1:13-cv-05414-LGS (Nov. 23, 2015) (ECF No. 135)) (Order & J.) at A340.  In that Order, the district court also held that the "[c]ommon issues of fact and law [in the case] include[d]:

> (a) the terms of Defendant's 1999 Closing Agreement with the IRS that is the factual basis for the Consolidated Actions and
>
> (b) whether Defendant owed a duty to consider and protect Plaintiffs' interests in negotiating the Closing Agreement and, if so, whether Defendant breached said duty.

Order & J. at A338-39 (¶ 2).  Additionally, the district court held that the "predominate" issues in the class action were whether the Hospital "had a duty to not act contrary to the Class Members' interests when it negotiated the Closing Agreement" and whether the "Closing Agreement (and NYP's failure to disclose them) violated that duty."  *Id.* at A338 (¶ 3).  The settlement agreement provided for a gross settlement amount of $6,632,000, which the Hospital agreed to pay to class members to settle the consolidated actions.  *Id.* at A335.  Of the $6,632,000 awarded, the Residents' attorneys were awarded $1,938,824.65 in attorneys' fees (over 29 percent of the settlement).  *Id.* at A337.  The district court also awarded $43,508.69 in costs, $33,000 in administration fees, and $90,000 in "service awards" to the named plaintiffs.  *Id.* at A337-38.  An

additional $1,691.46 was paid to a charitable organization, Doctors Without Borders, as a *cy pres* distribution from the settlement fund.  Def. Mot. Ex. 9 (Letter Regarding Donation to Doctors Without Borders) at App. 252.

> The executed Settlement Agreement explicitly acknowledged that:
>
> The Parties agree that Class Members' Settlement Awards can be appropriately characterized as a refund for the amount of FICA taxes previously withheld by the Hospital from the Class Members.

Pl. Mot. Ex. 1A (Joint Stip. of Settlement & Release, *Childers*, 1:13-cv-05414-LGS (S.D.N.Y. Oct. 8, 2015) (ECF No. 125-1) (Executed Joint Stip. of Settlement & Release) at A24 (¶ 50.A); *see also id.* at A25 ¶ 51 (releasing claims "arising out of, in connection with or relating to FICA taxes paid . . . or withheld by [Hospital] on [Resident's] behalf during the [class period].").  The Residents' awards under the Settlement Agreement were explicitly based on the amount of FICA tax the Hospital withheld from that Resident and paid to the Government, minus the amount of any FICA refund that Resident already received from the Government for years during the Class Period.  Executed Joint Stip. of Settlement & Release at A12, A24 (¶¶ 34, 49).  Residents making claims for their share of the settlement were also required to submit a "Declaration of Previous Refund" disclosing the amount of any FICA refunds already received for years during the Class Period.  *Id.* at A17-18 (¶ 40).

Upon approving the Settlement Agreement, the district court dismissed the Residents' claims.  Order, *Childers*, 1:13-cv-05414-LGS (S.D.N.Y. Jan. 15, 2016) (ECF No. 137); Order, *Simon*, No. 1:13-cv-05899-LGS (S.D.N.Y. Jan. 15, 2016) (ECF No. 148).

III.  Indemnity Suit in the Court of Federal Claims

On April 20, 2016,[4] the Hospital filed suit in the Court of Federal Claims against the Government arguing that section 3102(b) indemnified the Hospital for the Residents' claims and seeking, *inter alia*, reimbursement of the "full amount of any money paid by the Hospital stemming from the claims and demands made in the SDNY Actions . . . ."  Compl. at 7.  The Government moved to dismiss, arguing: (1) section 3102(b) did not waive sovereign immunity, (2) section 3102(b) is not money-mandating, and (3) the Residents' action was not a FICA refund action but rather an action grounded in tort.  Mot. of the United States to Dismiss the Compl. (ECF No. 8) (Def. MTD) at 12-29.  Specifically, the Government argued that the term "indemnified" in section 3102(b) is properly read to mean that employers are "immune from . . . employees' claims and demands," and not that the United States will "compensate[]" employers for payment made in response to those claims and demands.  *Id.* at 13.  The Honorable Nancy Firestone granted the Government's Motion to Dismiss, holding that section 3102(b) is not a money-mandating source of substantive law, as is required for the Court of Federal Claims to have jurisdiction pursuant to the Tucker Act.  *See New York & Presbyterian Hosp. v. United States*, 128 Fed. Cl. 363, 370-73 (2016), *rev'd*, 881 F.3d 877 (Fed. Cir. 2018).  In dismissing the case, Judge Firestone reasoned that "the word 'indemnified' did not necessarily mean a right to 'reimbursement'" and that the "better reading" of the word "indemnify" was "exemption from liability."  *Id.* at 370 (citation omitted).

---

[4] The Hospital originally filed the pending case in the Court of Federal Claims on June 10, 2015 (ECF No. 1 in Case No. 15-593T), prior to the district court's dismissal of the Hospital's claim against the United States.  On April 18, 2016, this Court dismissed the Hospital's complaint without prejudice for lack of jurisdiction pursuant to 28 U.S.C. § 1500 (ECF No. 28 in Case No. 15-593T), on the ground that at the time the Hospital filed the action on June 10, 2015, its third-party complaint against the Government was still pending before the district court.

IV.  Appeal to the Federal Circuit

The Hospital appealed the dismissal to the United States Court of Appeals for the Federal Circuit (Federal Circuit).  The sole issue on appeal was whether section 3102(b)'s "shall be indemnified" language is a money-mandating source of substantive law.  *New York & Presbyterian Hosp. v. United States*, 881 F.3d 877, 882 (Fed. Cir. 2018).  The Federal Circuit reversed the Court of Federal Claims and held that section 3102(b) was reasonably amenable to a money-mandating reading for Tucker Act jurisdiction.  *Id.* at 882.[5]  The Federal Circuit began its analysis by interpreting the plain language of section 3102(b).  In addition to citing a number of dictionaries for the proposition that indemnified means "reimburse," the Federal Circuit also cited the Restatement (First) of Restitution with approval, indicating it believes the restatement accurately captures the common law concepts of indemnification at the time Congress enacted section 3102(b).  *See id.* at 877, 884 n.9 (citing Restatement (First) of Restitution § 80 (Am. Law Inst. 1937)).  The Federal Circuit rejected the Government's primary argument that section 3102(b)'s "shall be indemnified" language refers to immunity from liability rather than reimbursement.  *Id.* at 886.

The Federal Circuit also rejected the Government's policy arguments, which are similar to the policy arguments the Government continues to make in the pending motion.  On appeal, the Government argued that "the Hospital's reading of § 3102(b) as a reimbursement provision cannot be squared with the first clause of the statute because it would make little sense to read the very next clause of the statute as authorizing employers who have so collected and paid FICA taxes to the IRS to turn around and, at their own whim, pay the claims and demands of their employees

---

[5]  The Government continues to disagree with the Federal Circuit's interpretation that section 3102(b) is a reimbursement provision and not an immunity provision. *See* Def. Mot. at ii n.1.  This Court is bound by the Federal Circuit's interpretation and will not reconsider its ruling.

and then be entitled to full reimbursement from the United States for doing so." *New York & Presbyterian Hosp.*, 881 F.3d at 885 (internal quotations omitted).  The Government also noted that such an interpretation would undermine Congress's refund scheme laid out in section 7422 because employees could just seek refunds from their employers and then the employers could just turn around and sue the Government.  *Id.* at 880.  In rejecting these policy arguments, the Federal Circuit compared the language of section 3102(b) to, *inter alia*, section 7422.  *Id.* at 886-87.  The Federal Circuit found that section 3102(b)'s "shall be indemnified" language extends beyond section 7422 because a contrary interpretation would render section 3102(b) superfluous.  *Id.* at 886.  The Federal Circuit also recognized that the statutes' different wording is evidence that the statutes were designed to accomplish different tasks.  *Id.* at 887.  The Federal Circuit added that it is the role of the court to interpret the plain language of the statute to see if "some other approach might accord with good policy."  *Id.* at 887 n.15 (quoting *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 231 (2014) (internal quotation marks and citation omitted)).  The Federal Circuit also rejected its sister courts' interpretations of section 3102(b) as not creating a private right of action.  *See id.* at 885 n.12 (disagreeing with *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 67-68 (3d Cir. 2008) and *McDonald v. S. Farm Bureau Life Ins. Co.*, 291 F.3d 718, 724-25 (11th Cir. 2002)).

Although the Federal Circuit's majority was not persuaded by these policy arguments, Judge Kathleen M. O'Malley found these arguments persuasive in her dissent.  *New York & Presbyterian Hosp.*, 881 F.3d at 892 (O'Malley, J., dissenting).  Specifically, the dissent explained its view that the majority's interpretation of section 3102(b) would lead to an absurd result because it undermines the comprehensive refund scheme articulated in section 7422 by permitting suits for tax refunds: (1) against employers (in contravention of section 7422(f)), (2) that would otherwise be time-barred (in contravention of section 6511), and (3) that have not exhausted administrative

remedies.  *Id.* at 892-93.

The Federal Circuit also distanced itself from the district court's opinion in *Childers,* finding that the district court should have dismissed the Residents' class action.  *See New York & Presbyterian Hosp.*, 881 F.3d at 887 ("the District Court should have interpreted § 7422 so that the Hospital was immunized from the District Court Plaintiffs' Complaint and dismissed their claims").  The Federal Circuit also held, and significantly this Court is bound by the holding, that the Government had conceded that the Residents' complaint should have been dismissed under section 7422.  *New York & Presbyterian Hosp.*, 881 F.3d at 887 (citing J.A. 399).

On April 18, 2018, the Government filed a petition for rehearing *en banc*, which the Federal Circuit denied.  *See* Pl. Mot. Ex. 2Q (Order, *New York & Presbyterian Hosp. v. United States*, No. 17-1180 (Fed. Cir. June 19, 2018)).  The case was remanded to this Court for further proceedings. Following this remand, the parties cross-moved for summary judgment.

Subsequently, on February 27, 2020, this action and the underlying motions were transferred to the undersigned judge.  (ECF No. 65.)  On June 2, 2020, this Court held oral argument on the motions.  (ECF No. 69.)

**DISCUSSION**

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  United States Court of Federal Claims Rule 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The moving party carries the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A "genuine" dispute is one that "may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250.  A material fact is

one that "might affect the outcome of the suit under the governing law." *Id.* at 248.  In considering the existence of a genuine issue of material fact, a court must draw all inferences in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If no rational trier of fact could find for the non-moving party, a genuine issue of material fact does not exist and the motion for summary judgment may be granted.  *Id.* at 588. With respect to cross-motions for summary judgment, each motion is evaluated on its own merits and reasonable inferences are resolved against the party whose motion is being considered. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987).  To the extent there is a genuine issue of material fact, both motions must be denied.  *See id.*

It is important to note at the outset that this Court is not deciding this case on a blank slate. Section 7422(a) of the I.R.C. generally precludes any court from considering an employee's claim for the recovery of any FICA taxes paid until the employee files a claim with the IRS.  Such a suit "may be maintained only against the United States."  I.R.C. § 7422(f)(1).  The "expansive reach" of section 7422 ensures "that taxpayers seeking refunds of unlawfully assessed taxes must comply with the Code's refund scheme before bringing suit, including the requirement to file a timely administrative claim."  *Clintwood Elkhorn Min. Co.*, 553 U.S. at 7-8.  The case before this Court deals with the rare instance where, because of the complex procedural history, the relationship between section 7422 and section 3102(b) is effectively severed.  As noted, Federal Circuit has already engaged in an extensive analysis of section 3102(b)'s indemnity provision; this Court is bound by that decision and will not entertain relitigation of such issues here.  *New York & Presbyterian Hosp.*, 881 F.3d at 885-87.  All that is left for this Court to decide is whether section 3102(b) mandates reimbursement on the facts before the Court.

To recap, section 3102(b) provides that "[e]very employer required so to deduct the [FICA] tax shall be liable for the payment of such tax, and shall be indemnified against the claims and demands of any person for the amount of any such payment made by such employer."  I.R.C. § 3102(b).  A plain reading of section 3102(b) makes clear that the right to indemnification is limited to "claims and demands . . . for the amount of any such payment made by such employer."  *Id.* The phrase "such payment" clearly refers to payment of the FICA tax over to the Government. Accordingly, the employer is indemnified only from claims and disputes for the payment of FICA taxes it pays to the Government.  *See New York & Presbyterian Hosp.*, 881 F.3d at 882 n.6 ("the only reasonable interpretation of § 3102(b) is that it mandates the Government to reimburse FICA taxes paid to an employer").  The parties agree that if the Residents' suit was a suit for a FICA tax refund then the Hospital is entitled to indemnity.  Transcript of June 2, 2020 Oral Argument (OA) at 22-23, 38-39 (ECF No. 69).  Conversely, if the Residents' suit sounded in tort, then the Hospital would not be entitled to indemnity.

This Court holds that the Residents' suit was a suit for a FICA tax refund; therefore, the Hospital is entitled to indemnification under section 3102(b).

I.  The Residents' Suit was a FICA Tax Refund Suit

The Government argues that the settlement payment was made for common law tort claims "stem[ming] not from its collection of FICA taxes, but from later, independent actions and omissions."  Def. Mot. at ii (quoting *Childers*, 36 F. Supp. 3d at 303); *see also* Def. Mot at 6-7. The Government argues section 3102(b)'s indemnity provision is only applicable when an employee, the Residents in this instance, makes a claim or demand challenging the employer's withholding or collection of tax and payment of the tax over to the Government.  Def. Mot. at iii, 6-7, 14-19; Def. Resp. at 2-13; Def. Reply at 1-3.  Moreover, Defendant argues that the Hospital's

agreement with the Residents to calculate each Resident's settlement as the amount of FICA tax withheld by the Hospital does not transform the nature of the Residents' underlying tort claims. Def. Mot. at 8, 20-24; Def. Resp. at 2-4, 11.

The Hospital argues the Residents' suit was within the scope of section 3102(b) because it was a "claim and demand for the amount of" FICA taxes the Hospital collected and paid over to the Government.  Pl. Mot. at 17-19, 27; *see also* Pl. Resp. at 3-8; Pl. Reply at 12.  To support this assertion, the Hospital points to statements made in the Residents' complaints, the Residents' initial disclosures, the parties' settlement agreement, and the district court's order approving the settlement.  Pl. Mot. at 20-22 (citing *e.g.*, *Childers* Compl. ¶¶ 6, 7, 38; *Simon* Compl. ¶¶ 44, 52; Consolidated Am. Compl. ¶¶ 6, 45-48, 52, 56; *Childers* Initial Disclosures at A320; *Simon* Initial Disclosures at A326-28; Executed Joint Stip. of Settlement & Release at A9; Order & J. at A340; *see also* Pl. Reply at 7-9).  The Hospital notes further that the legal theory behind the claims and demands or the reason(s) for withholding the FICA taxes or not seeking a refund is inapposite because the statute focuses on the funds withheld, not the theory entitling the employee to the money withheld, and not the cause of action.  Pl. Mot. 28-29; Pl. Reply at 15-16.

Contrary to Defendant's assertions, the cause action underlying of the Residents' claims for FICA tax refunds is immaterial.  Here, the Residents' claims sounded in tort and sought to divest the Hospital of what "amounted to a 'de facto' FICA refund."  *See* Consolidated Am. Compl. at A99-100.  However, this "de facto" characterization of the FICA tax refund does not remove the Residents' suit beyond the purview of section 3102(b)'s indemnity provision.  *See Clintwood Elkhorn Mining Co.*, 553 U.S. at 7, 9 (stating that section 7422 bars any claim seeking the recovery of any internal revenue tax "whatever the source of the cause of action"); *Reuss v. Orlando Health, Inc.*, 140 F. Supp. 3d 1299 (M.D. Fla. 2015) (dismissing claim nearly identical to *Childers*).  For

purposes of the section 3102(b), the appropriate inquiry is simply whether the Residents' suit was "for the amount of" FICA tax collected.  I.R.C. § 3102(b).

A review of the Residents' complaints, initial disclosures, and settlement with the Hospital all support the finding that the Residents' suit was a suit for a FICA tax refund.  In their complaints, the Residents sought as "damages" the amount of the tax refunds—dollar-for-dollar—they claimed they overpaid in FICA taxes because refund claims were not filed for them.  *See, e.g.*, *Simon* Compl. at A 82 (¶ 16) (seeking "[t]he amount of FICA due to each resident had Defendant filed FICA Protective Refund Claims").  In their initial disclosures, the *Simon* plaintiffs go through the exact FICA tax each Resident paid for each tax year spanning the class period, and they state these calculations as their "[a]ctual and compensatory damages."  *Simon* Initial Disclosures at A326-329; *see also Childers* Initial Disclosures at A320 ("Plaintiffs will compute their damages by totaling the amount of FICA taxes withheld by [the Hospital] during the class period . . . .").  Furthermore, the Residents claimed they are entitled to interest on tax payments "in accordance with 26 U.S.C. §§ 6611(a); 6621(a), and any other applicable statute."  *Simon* Initial Disclosures at A326-329.  Sections 6611(a) and 6621(a) concern interest for the over payment of tax.  I.R.C. §§ 6611(a) ("Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the overpayment rate established under section 6621."); 6621(a)(1) (establishing the method for determining the rate of interest on the overpayment of taxes).  Accordingly, reference to these statutes would be appropriate if the Residents' claims were claims for a tax refund but would not be appropriate if the Residents' claims were tort claims.

Next, the settlement agreement at issue explicitly acknowledged that, "[t]he Parties agree that Class Members' Settlement Awards can be appropriately characterized as a refund for the amount of FICA taxes previously withheld by the Hospital from the Class Members."  Executed

18

Joint Stip. of Settlement & Release at A24 (¶ 50.A).  Per the terms of the settlement, the Class Members were also required to submit a "Declaration of Previous Refund" disclosing the amount of any FICA tax refunds already received during the Class Period.  *Id.* at A17 (¶ 40).  The Notice of Proposed Settlement also indicates that the Residents' suit was one for FICA taxes withheld by the Hospital by informing class members that "[o]nce you return the Declaration of Previous Refund, . . . you will no longer be able to sue NYP about any claims relating to FICA taxes withheld by NYP on your behalf during the period from January 1, 1995 through June 30, 2001."  *Id.* at A42.  And the district court itself recognized this much in its Order when it characterized the Hospital's settlement with the Residents as "seeking a tax refund."  Order & J. at A340.  Thus, the Residents' suit was one for FICA tax refunds and fell squarely within the purview of section 3120(b)'s indemnity provision.

Defendant relies on *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007) and *Bancroft v. Indemnity Insurance Co.*, 203 F. Supp. 49 (W.D. La.), *aff'd*, 309 F.2d 959 (5th Cir. 1962) for the proposition that the Residents' suit is not converted into a suit for a tax refund simply because the Residents chose to measure of damages in terms of the amount they paid in FICA taxes.  However, these cases are inapposite.  In *Mikulski*, investors sued a corporation for mishandling its own tax liability, which inflated the shareholders' tax liability. 501 F.3d at 558. There, the United States Court of Appeals for the Sixth Circuit specifically noted in *Mikulski* that "[the corporation] was not acting as a collection agent for or on behalf of the IRS."  *Id.* at 564-65. Likewise, *Bancroft* involved a suit for professional negligence of a public accountant, and the accountant was not acting on behalf of the government.  In sum, neither defendant in *Mikulski* or *Bancroft* was acting as an agent of the government or pursuant to any government agreement.

Unlike those decisions, the Hospital acted in accordance with federal law and IRS directives when it entered into its Closing Agreement with the IRS, and subsequently did not seek a FICA tax refund for its residents.  The Government does not contend the Hospital committed any wrong in not seeking a FICA refund for its employees.  OA at 16:10-21 ("[Defendant is] not saying that the hospital is actually guilty of any of the torts that the residents assert against them. That's not our position.").  The Government does not allege (1) that the Hospital failed to fulfill its duties under I.R.C. §§ 3101-3128 by properly collecting and paying over to the Government the employee's share of FICA taxes, (2) that the Hospital had a duty to seek FICA refunds for its residents when the Hospital did not seek a FICA refund for itself, (3) that the Hospital violated any IRS directives by entering into a settlement agreement, or (4) that the Hospital bargained away the Residents' abilities to seek their own individual tax refunds.

There is no allegation that the Hospital violated any internal revenue laws by failing to seek a refund for its employees.  OA at 16:3-21.  The Hospital acted in accordance with Treasury Regulations which do not impose a duty on an employer to seek FICA tax refunds for its Residents except when the Hospital seeks a FICA refund for itself.  *See* Treas. Reg. § 31.6402(a)-2(a)(ii). The Hospital did not violate any IRS directives by entering into a closing agreement.  In fact, if the Hospital was bound by its agreement with the IRS not to seek FICA refunds for its Residents, then the Government would have in some sense condoned the Hospital's actions.  Thus, it is difficult to imagine how entering into a valid closing agreement with the Government or any actions taken pursuant to such a valid agreement can operate to remove the Hospital from the protections of section 3102(b)'s indemnity provision.  Finally, the Hospital did not bargain away the Residents' abilities to seek their own individual tax refunds.  Each Resident was free to seek an individual refund notwithstanding the Hospital's agreement with the IRS. *See Childers* Compl.

20

A60, A63 (¶¶ 7, 21); *Simon* Compl. A78-79, A88 (¶¶ 3, 47); Consolidated Am. Compl. A99 (¶ 6).

Because the Residents' suit was "for the amount of" FICA tax—which the Hospital properly collected on behalf of the government and in accordance with federal tax laws—the Hospital is not excluded from the coverage of section 3102(b)'s indemnity provision.  I.R.C. § 3102(b).

## II.  Collateral Estoppel Does Not Bar this Court from Determining that the Residents' Suit Was a Suit for a FICA Tax Refund

The Government argues that the Hospital is collaterally estopped from disputing the district court's holding in *Childers* that the "claims and disputes" in that case were not for FICA tax refunds.  *See* Def. Mot. at ii, 7, 10-14; Def. Resp. at 3, 7-8; Def. Reply at 3-8.  Moreover, the Government asserts the district court's decision should be treated as final, because it was the Hospital's own decision to settle the Residents' suit that precluded them from appealing any final judgment on the merits.  Def. Mot. at 13.

The Hospital counters that none of the elements of collateral estoppel are met here.  Pl. Resp. at 17-23.  The Hospital also notes that the Federal Circuit on appeal has disagreed with the district court to the extent the district court found that the Resident's claims were not FICA refund claims.  Pl. Resp. at 3-4.  This Court agrees with the Hospital.

"Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation."  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).  The use of collateral estoppel, unlike res judicata, is a discretionary decision.  *See id.* at 331.  Under the doctrine of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation."  *Copar Pumice Co., Inc. v. United States*, 112 Fed. Cl.

515, 530 (2013) (citing *United States v. Mendoza*, 464 U.S. 154, 158 (1984)).  For collateral

estoppel to bar an issue that was litigated in an earlier action, the following four requirements must

be satisfied:

> (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the
> issue was actually litigated in the prior proceeding; (3) the determination of the
> issue in the prior litigation must have been a critical and necessary part of the
> judgment in the first action; and (4) the party against whom collateral estoppel is
> asserted must have had a full and fair opportunity to litigate the issue in the prior
> proceeding.

*Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1323 (Fed. Cir. 2003) (internal quotation marks

omitted) (citing *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1999)).

Moreover, collateral estoppel may apply even where a court did not technically reach a final

judgment if that court makes a determination that is "sufficiently firm to be accorded conclusive

effect" and is not "avowedly tentative."  *Dana.*, 342 F.3d at 1323 (citing Restatement (Second) of

Judgments § 13 (1982)).  "The relevant question is whether the issue has been resolved in the prior

action so that the Court has no good reason to permit it to be litigated again."  *In re Cenco Inc.*

*Securities Litigation*, 529 F. Supp. 411, 416 n.5 (N.D. Ill. 1982) (citing *Miller Brewing Co. v. Jos.*

*Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir. 1979)); *but see Fin. Acquisition Partners LP v.*

*Blackwell*, 440 F.3d 278, 285 (5th Cir. 2006) (holding that when a case is subsequently settled, a

decision denying the motion to dismiss "cannot be given preclusive effect" because settlement

agreements are generally not given preclusive effect and because the denial was not a final

judgment on the merits).

Collateral estoppel does not apply here because the district court's decision in *Childers* was

"avowedly tentative."  *See Block v. U.S. Int'l Trade Comm'n*, 777 F.2d 1568, 1572-3, n.7-8 (Fed.

Cir. 1985) (finding ITC's decision to terminate its investigation under 19 U.S.C. § 1337(c) was

avowedly tentative where ITC decision was not "firm and stable" as evidence by ITC's statements

that there was still a possibility that ITC would investigate plaintiff's claims).  In *Childers,* the district court held that the Residents' claims did "not arise out of the Hospital's collection of taxes . . . but from later, independent actions and omissions, such as agreeing in the Settlement not to file protective refund claims on behalf of Plaintiffs, keeping the Settlement secret from Plaintiffs, not filing refund claims on behalf of Plaintiffs, and not informing Plaintiffs that they should file refund claims for themselves."  *Childers*, 36 F. Supp. 3d at 303.  Moreover, the district court stated that the Residents were not seeking to hold the "Hospital liable for any action that the IRS required the Hospital to take, or that the Hospital reasonably could have believed it was required to take. . . . Instead, Plaintiffs [sought] to hold the Hospital liable for completely distinct allegedly unlawful conduct."  *Id.* at 303-04.  The district court also found that "Plaintiffs [were] not seeking to recover the FICA taxes withheld, but the amount by which the Hospital benefited at Plaintiffs' expense by entering into the Settlement."  *Id.* at 305.  The Hospital then sought reconsideration and certification for interlocutory appeal of the district court orders denying its motion to dismiss which the district court summarily denied.  *Id.* at 317-20.  In its Supplemental Opinion, the district court responded to the Hospital's arguments that it failed to recognize the jurisdictional bar set by section 7422 stating, "the Hospital's alleged wrongdoing was not its decision to refrain from filing FICA refund claims in the first instance, but its decision to enter into the 1999 tax settlement with the IRS . . . thereby gaining valuable consideration in exchange for—in effect—compromising Plaintiffs' refund claims."  *Id.* at 317-18.  However, later, in accepting the parties' settlement agreement the district court held the Residents' claims "could reasonably be characterized as seeking a tax refund."  Order & J. at A340.

These statements are irreconcilable.  This Court has no reason to choose one statement as preclusive of the other.  The Government bears the burden of proof as the party seeking to invoke

collateral estoppel and has failed to carry that burden with respect to the finality or firmness of the district court's judgment with respect to its characterization of the claims. *See RF Delaware, Inc. v. Pacific Keystone Technologies, Inc.*, 326 F.3d 1255, 1261-62 (Fed. Cir. 2003) (finding that where the parties had settled the issues themselves, without a final order approving the settlement from the court, two interlocutory orders preceding that settlement were not sufficiently firm to support a claim of collateral estoppel).

Moreover, the Federal Circuit has voiced its disapproval of the district court's decision in *Childers*, specifically holding that "the District Court should have interpreted § 7422 so that the Hospital was immunized from the District Court Plaintiffs' Complaint and dismissed their claims . . . ." *See New York & Presbyterian Hosp.*, 881 F.3d at 887. Such an interpretation of section 7422 would lead to dismissal only if the Residents' suit was characterized as one for a tax refund. *See Clintwood Elkhorn Mining Co.*, 553 U.S. at 7, 9. And even if the Federal Circuit's statement is dicta, as a subordinate court, this Court should follow carefully considered statements regarding the characterization of the Resident's claims against the Hospital. *See DaimlerChrysler Corp. v. United States*, 361 F.3d 1378, 1385 n.3 (Fed. Cir. 2004) (citing *Ins. Co. of the West v. United States*, 243 F.3d 1367, 1372 (Fed. Cir. 2001)); *Stone Container Corp. v. United States*, 229 F.3d 1345, 1349-50 (Fed. Cir. 2000)).[6] Thus, to the extent the issue was resolved at all, it was resolved in favor of the Hospital.

For these reasons, the Hospital is not collaterally estopped from arguing that the Residents' suit was for a FICA tax refund.

---

[6] Additionally, since the *Childers* decision was issued, courts have disagreed with its reasoning. *See, e.g.*, *Reuss v. Orlando Health, Inc.*, 140 F. Supp. 3d 1299 (M.D. Fla. 2015) (finding medical Residents' suit for breach of fiduciary duty for failure to seek a FICA refund preempted by section 7422).

24

III.  The Government Must Indemnify the Hospital Notwithstanding the I.R.C. § 6511(a)'s
Time Bar or any other Defense the Government May Have Had Against the Residents'
Suit

Finally, Defendant argues that if the Residents were to try to bring a tax suit against the

Government, the Residents would be time barred in bringing such a suit.  Def. Mot. at iii; 27-31

(citing I.R.C. § 6511(a) (mandating that a claim for credit or refund generally be filed "within 3

years from the time the return was filed or 2 years from the time the tax was paid, whichever of

such periods expires the later . . .")); Treas. Reg. § 301.6511(a)-1(a)(1); *Clintwood Elkhorn*, 553

U.S. at 8-9; *Commissioner v. Lundy*, 516 U.S. 235, 240 (1996); *Brockamp v. United States*, 519

U.S. 347, 350 (1997); *United States v. Dalm*, 494 U.S. 596, 602 (1990); *United States v. A.S.

Kreider Co.*, 313 U.S. 443, 447-48 (1941); *RadioShack Corp. v. United States*, 566 F.3d 1358,

1362 (Fed. Cir. 2009).

The Government had ample opportunity to assert this and any other defense it may have

had to the Residents' suit before the district court but affirmatively chose not to do so.  Prior to the

Hospital's settlement with the Residents, the Government had notice of the claims and was invited

to participate in the Hospital's writ of mandamus.  *See* Williams E-mail.  Moreover, the

Government was invited to participate in the settlement discussions between the Residents and

Hospital.  *See* Folch E-mail.  Yet, the Government refused to participate in those negotiations.  *Id.*

Accordingly, the Government cannot at this late date assert defenses against the Residents' FICA

refund claims that it could have asserted during the underlying dispute.  *See* Restatement (First) of

Restitution § 76 cmt. f (Am. Law Inst. 1937) (stating that an indemnitor may be liable to

indemnitee if the indemnitor "is notified and given an opportunity to defend[ ] but fails to conduct

the defense").

## **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (ECF No. 49) and **DENIES** the Government's Cross-Motion for Summary Judgment (ECF No. 50).  The parties have reserved briefing on damages.  The parties are **DIRECTED** to file a joint status report by March 3, 2021, proposing a schedule for further proceedings.


IT IS SO ORDERED.


   s/Eleni M. Roumel
ELENI M. ROUMEL
Chief Judge

February 17, 2020
Washington, D.C.