# In the United States Court of Federal Claims

| | |
|---|---|
| THE NEW YORK AND PRESBYTERIAN HOSPITAL,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 16-cv-00496<br><br>Filed Under Seal: August 5, 2022<br><br>Publication: August 12, 2022[1] |

*Boris Bershteyn*, Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York for Plaintiff. With him on the briefs are *Mollie Kornreich*, Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York; *Fred T. Goldberg, Jr.,* and *Sylvia O. Tsakos*, Skadden, Arps, Slate, Meagher & Flom LLP, Washington, District of Columbia.

*Matthew D. Lucey*, United States Department of Justice, Tax Division, Court of Federal Claims Section, Washington, District of Columbia for Defendant. With him on the briefs are *David I. Pincus*, Chief, Court of Federal Claims Section; and *David A. Hubber*, Deputy Assistant Attorney General, Tax Division.

## MEMORANDUM AND ORDER

This Court previously held that section 3102(b) of the Internal Revenue Code requires Defendant the United States (Government) to indemnify Plaintiff The New York and Presbyterian Hospital (Hospital) for the Hospital's settlement of consolidated class action claims concerning the Hospital's failure to file tax refund claims on the behalf of residents and fellows employed by the Hospital. *N.Y. & Presbyterian Hosp. v. United States*, 152 Fed. Cl. 507, 516 (2021). Presently

---

[1] This Memorandum and Order was filed under seal, in accordance with the Protective Order entered in this case (ECF No. 55), and the parties consented to republication without redactions. (ECF No. 91.) The sealed and public versions of this Memorandum and Order are identical, except for the publication date and this footnote.

before the Court is the Hospital's Motion for Summary Judgment on Attorneys' Fees and Costs. The Hospital's Motion presents a single issue: whether the Government's indemnification obligation under Internal Revenue Code section 3102(b) includes attorneys' fees and costs. The short answer is that it does. Accordingly, for the reasons explained below, this Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment on Attorneys' Fees and Costs (ECF No. 78).

## BACKGROUND

This case has a lengthy litigation history, familiarity with which is presumed.[2] A condensed summary follows. The Hospital and its predecessor by merger employed medical residents and fellows (collectively, the Residents) enrolled in Accreditation Council for Graduate Medical Education at a medical college currently known as the Hospital's Weill Cornell Campus. *N.Y. & Presbyterian Hosp. v. United States*, 152 Fed. Cl. 507, 510 (2021). In August 2013, two groups of Residents filed class action lawsuits against the Hospital in the United States District Court for the Southern District of New York, alleging (i) the Hospital failed to file refund claims with the IRS to allow the Residents to recover FICA taxes collected and paid by the Hospital on their behalf for tax periods before April 1, 2005; and (ii) had the Hospital filed such refund claims for the Residents, the Residents would have received refunds of such FICA taxes collected and paid to the Government during the class period. *Id.* at 511; *see also Childers v. N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 300 (S.D.N.Y. 2014). "As relief, the Residents sought damages in the amount of the FICA tax withheld by the Hospital for the period at issue." *N.Y. & Presbyterian Hosp.*, 152 Fed. Cl. at 511. The District Court consolidated the class actions for pretrial purposes. *Id.* (citing *Childers*, 36 F. Supp. 3d at 301).

---

[2] *See N.Y. & Presbyterian Hosp. v. United States*, 881 F.3d 877 (Fed. Cir. 2018); *N.Y. & Presbyterian Hosp. v. United States*, 152 Fed. Cl. 507 (2021); *N.Y. Presbyterian Hosp. v. United States*, 128 Fed. Cl. 363 (2016).

The Residents eventually entered into a settlement agreement with the Hospital to resolve the consolidated class actions. *Id.* at 512 (citations omitted). Under the settlement, the Hospital agreed to pay $6,632,000 to settle the Residents' claims. *Id.* at 513 (citing Order & Judgment, *Childers*, 1:13-cv-05414-LGS (Nov. 23, 2015)). The District Court approved the class action settlement and dismissed the two consolidated cases. *Id.*

Following settlement of the class actions, the Hospital filed suit in this Court seeking indemnification from the Government for, *inter alia*, the "full amount of any money paid by the Hospital stemming from the claims and demands made in the [Class] Actions" and "attorneys' fees, costs, and other expenses incurred by the Hospital in defending against the 'claims and demands' of the [Residents] for 'the amount of' FICA taxes demanded in the [Class] Actions." Plaintiff's Complaint (ECF No. 1) (Compl.) at 7. The Government filed a motion to dismiss, and the Honorable Nancy B. Firestone granted the Government's motion, "holding that section 3102(b) is not a money-mandating source of substantive law, as is required for the Court of Federal Claims to have jurisdiction pursuant to the Tucker Act." *N.Y. & Presbyterian Hosp.*, 152 Fed. Cl. at 514.

The Hospital appealed, and the United States Court of Appeals for the Federal Circuit (Federal Circuit) reversed. *Id.* (citing *N.Y. & Presbyterian Hosp.*, 881 F.3d at 882). The Federal Circuit "held that section 3102(b) was reasonably amenable to a money-mandating reading for Tucker Act jurisdiction." *Id.* Relevant to the present Motion, in reaching its holding the Federal Circuit examined several dictionaries published around the time of section 3102's enactment and concluded "that indemnified means 'reimburse.'" *Id.* (citing *N.Y. & Presbyterian Hosp.*, 881 F.3d at 877, 884 n.9). The Government unsuccessfully petitioned for rehearing *en banc*, and the case was remanded to this Court for further proceedings. *Id.* at 515 (citing Order, *N.Y. & Presbyterian Hosp. v. United States*, No. 17-1180 (Fed. Cir. June 19, 2018)).

3

On remand, the parties filed cross-motions for summary judgment on the Hospital's entitlement to indemnification under Internal Revenue Code § 3102(b) for the Residents' claims in the settled class action suits. *See* Plaintiff's Motion for Summary Judgment (ECF No. 49); Defendant's Cross-Motion for Summary Judgment (ECF No. 50). After the action was transferred to the undersigned judge, this Court granted the Hospital's motion for summary judgment and denied the Government's cross-motion for summary judgment. *N.Y. & Presbyterian Hosp.*, 152 Fed. Cl. at 509. In doing so, it held "that the Residents' suit was a suit for a FICA tax refund; therefore, the Hospital is entitled to indemnification under section 3102(b)." *Id.* at 516. The parties' motions left for a later date resolution of how much the Government would owe the Hospital. *See id.* at 521.

On June 2, 2021, the parties filed a joint status report with this Court indicating that they were discussing two categories of damages under section 3102(b): (1) the amount the Hospital paid to settle the claims asserted in the class actions; and (2) the attorneys' fees and costs the Hospital incurred in defending the class actions. Joint Status Report, dated June 2, 2021 (ECF No. 75) at 2. The parties jointly expressed a belief that the latter category of damages presented a unique question of law and accordingly requested the opportunity to present briefing concerning whether attorneys' fees and costs the Hospital incurred in defending against the class actions are recoverable under section 3102(b). *Id.* at 2-3. Accordingly, this Court ordered the Hospital to file a motion for partial summary judgment "concerning whether attorneys' fees and costs incurred in the [class] actions are recoverable in this action." Order dated June 3, 2021 (ECF No. 76). The Hospital timely filed its Motion for Partial Summary Judgment, and this Court conducted oral argument on the pending Motion. *See* Transcript of Oral Argument (ECF No. 88) (Tr.).

APPLICABLE LEGAL STANDARD

A court may grant summary judgment if the pleadings, affidavits, and evidentiary materials filed in a case reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rules of the United States Court of Federal Claims (RCFC or Rule(s)) 56(a).  The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A genuine factual dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The court may only grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita, Elec. Indus. Co., Ltd. v. United States*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  Summary judgment is especially appropriate when "the only disputed issues [are] issues of law."  *Dana Corp. v. United States*, 174 F.3d 1344, 1347 (Fed. Cir. 1999).

DISCUSSION

The Hospital contends "that, as a matter of law, the Government's obligation to indemnify the Hospital pursuant to I.R.C. section 3102(b) includes reimbursing it for attorneys' fees and costs it incurred in defending the claims and demands asserted against it in the [class] actions." Plaintiff's Motion for Partial Summary Judgment (ECF No. 78) (Pl.'s Mot.) at 6.[3]  The Government argues that the statute's "unambiguous language" limits the Hospital's reimbursement to "the FICA tax it withheld, and no more."  Defendant's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment (ECF No. 82) (Def.'s Response) at 8.  It further argues, *inter alia*, that the Hospital's interpretation is inconsistent with broad legal

---

[3] Citations throughout this Memorandum and Order reference the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

principles related to payment of attorneys' fees, the Federal Circuit's previous decision in this case, and section 7430 of the Internal Revenue Code. *See id.* at 10-11. This Court agrees with the Hospital that the plain text of section 3102(b) includes reimbursement of its attorneys' fees and costs as part of the Government's indemnity obligation.

I. The Statute's Plain Text and the Ordinary Meaning of "Indemnified" Require the Government to Reimburse the Hospital's Attorneys' Fees and Costs

The Court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004). Section 3102(b) of the Internal Revenue Code states, "Every employer required so to deduct the tax shall be liable for the payment of such tax, and shall be indemnified against the claims and demands of any person for the amount of any such payment made by such employer." 26 U.S.C. § 3102(b). The Hospital argues that (i) the plain meaning of "indemnified" in section 3102(b) covers attorneys' fees and costs, and (ii) "there is a presumption that indemnification encompasses attorneys' fees and costs" absent express language to the contrary, which section 3102(b) lacks. Pl.'s Mot. at 11-13; Plaintiff's Reply in Support of Its Motion for Partial Summary Judgment (ECF No. 83) (Pl.'s Reply) at 7-13. The Government contends that the statute's plain language limits the Government's indemnity obligation "to reimbursement for . . . the employer's payment of the FICA tax imposed on the employee." Def.'s Response at 12. This Court agrees with the Hospital that the plain meaning of the statute encompasses indemnity of both the settlement amount and the costs and fees incurred in defending against the claims and demands asserted in the underlying cases. Indeed, section 3102(b) unambiguously enumerates the type of claims for which the Government must indemnify employers, and "indemnity" was understood to include attorneys' fees and costs when Congress enacted the predecessor to section 3102(b).

6

A. "For the Amount of Any Such Payment Made by Such Employer" Modifies "Claims and Demands of Any Person"

The Government argues that "[t]he plain language of § 3102(b) limits the indemnification to 'the amount of any *such payment* made by such employer.'" Def.'s Response at 12 (emphasis in original). In other words, the Government argues that "an employer's recovery from the government, if triggered, is limited to reimbursement for 'the amount of any such payment,' which is the employer's payment of the FICA tax imposed on the employee." *Id.* It further contends that "[t]he phrase 'such payment' in § 3102(b) is an internal limitation on the extent of indemnity provided by the statute." *Id.* The Hospital argues in response that the Government's interpretation of § 3102(b) improperly reads the phrase "such payment" out of context. Pl.'s Reply at 8. According to the Hospital, section "3102(b) does not limit *indemnification* to the amount of FICA tax paid to the government; instead the government is required to indemnify the Hospital 'against the claims and demands of any person for the amount of any such payment made by [the Hospital].'" *Id.* (emphasis in original). The Hospital's interpretation offers the most natural reading and "give[s] effect to every word in the statutory text." *Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1371 (Fed. Cir. 2013).

The prepositional phrase "for the amount of any such payment made by such employer" modifies "the claims and demands." The nearest-reasonable referent canon compels this conclusion.[4] Under that canon, postpositive modifiers apply "only to the nearest reasonable referent" where the statute's "syntax involves something other than a parallel series of nouns or

---

[4] The Hospital argues that "the rule of the last antecedent" compels this conclusion. Pl.'s Reply at 8. "Strictly speaking, the applicable rule in this case is not the rule of the last antecedent but the nearest-reasonable-referent canon — while pronouns have 'antecedents,' phrases such as '[for the amount of any such payment made by such employer]' do not." *Hall v. U.S. Dep't of Agric.*, 984 F.3d 825, 837-38 (9th Cir. 2020). The rules are, however, substantively identical. *Id.* at 838 (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 152 (2012)).

7

verbs." *Hall v. U.S. Dep't of Agric.*, 984 F.3d 825, 838 (9th Cir. 2020) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 152 (2012)).  Here, the nearest reasonable referent is "the claims and demands of any person."  26 U.S.C. § 3102(b).  Thus, the term "for the amount of any such payment made by such employer" conscribes the types of "claims and demands" that raise an indemnity obligation.  To read section 3102(b) otherwise would obligate the Government to indemnify employers for a limitless variety of suits that have nothing to do with the employer's role as a tax collector.  As the phrase "for the amount of any such payment made by such employer" defines the classes of "claims and demands" against which the Government must indemnify employers but does not expressly define the types of expenses that indemnity obligation encompasses, the Court must next examine the meaning of "shall be indemnified" in section 3102(b).

### B.  "Indemnification" Encompasses Attorneys' Fees

The Government argues that section 3102(b)'s use of the phrase "shall be indemnified," alone does not require payment of attorneys' fees and costs.  *See* Def.'s Response at 9-10 ("The government is not liable for attorneys' fees unless there is an unequivocal, express statutory provision allowing them"), 16 (arguing section 3102(b) "lacks the type of indemnity language that courts have found to allow for payment of attorneys' fees absent an express inclusion of attorneys' fees").  As noted, the Hospital responds that (i) the plain meaning of "indemnified" covers attorneys' fees and costs, and (ii) "that there is a presumption that indemnification encompasses attorneys' fees and costs."  Pl.'s Mot. at 12.; Pl.'s Reply at 13.  This Court need not resolve whether the United States Court of Federal Claims has a practice or presumption regarding the scope of indemnification, as the plain meaning of "indemnified" clearly encompasses attorneys' fees and costs.

8

"'It is a fundamental canon of statutory construction that . . . words will be interpreted as taking their ordinary, contemporary, common meaning,' which may be derived from '[d]ictionaries from the era of [the statutory provision]'s enactment.'" *N.Y. & Presbyterian Hosp.*, 881 F.3d at 882 (quoting *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014)).  Dictionaries published around the original enactment of section 3102(b)[5] indicate that "indemnified" means to be made whole by compensating expenses incurred defending a suit. *See Indemnify*, THE OXFORD ENGLISH DICTIONARY (1933) ("To compensate (a person, etc.) *for* loss suffered, expenses incurred, etc." (emphasis in original)); *Indemnify*, BOUVIER'S LAW DICTIONARY (Baldwin's Students Edition 1934) ("To secure or save harmless against loss or damage, of a specified character, which may happen in the future.  To compensate or reimburse one for a loss previously incurred."); *Indemnify*, WEBSTER'S NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE (1932) ("To make restitution or compensation to, as for loss, damage, etc.; to make whole; to reimburse; to compensate; also, to make good (a loss)."); *Indemnify*, THE CENTURY DICTIONARY AND CYCLOPEDIA (1911) ("To make good to; reimburse; remunerate.").  Based on these contemporaneous dictionaries, the plain meaning of "indemnify" at the time of the statute's enactment clearly included compensation from *all* expenses incurred in defending against a lawsuit.  To rule otherwise would prevent plaintiffs like the Hospital from being "made whole."

II. <u>This Court's Interpretation of Section 3102 Does Not Present the Inconsistencies Alleged by the Government</u>

Notwithstanding the plain and ordinary meaning of the term "indemnify," the Government argues that interpreting section 3102(b) to include attorneys' fees and costs conflicts with several bodies of law.  *See* Def.'s Response at 3-4.  The Government contends that awarding the Hospital

---

[5] "Section 3102(b) originally was enacted in 1935 as § 802(a) of the Social Security Act." *N.Y. & Presbyterian Hosp.*, 881 F.3d at 883 n.8.

9

attorneys' fees and costs under section 3102(b) violates the American Rule regarding attorneys' fees. *Id.* at 15-16. It further argues that the Hospital's interpretation of section 3102(b) conflicts with the Internal Revenue Code's mechanism for awarding litigation costs and with the Federal Circuit's interpretation of section 3102(b) in this case. *Id.* at 13-14, 31-34. Finally, the Government argues that Congress would not have adopted a statute that would permit "open-ended" liability, as it asserts the Hospital's interpretation might permit. *Id.* at 18. The Government's concerns are misplaced.

> A. The Hospital's Interpretation of Section 3102(b) Is Consistent with the Federal Circuit's Decision in This Case

The Government argues that because the Federal Circuit relied in part on legislative history in holding that section 3102(b) was money-mandating, this Court should apply such legislative history to the question of whether indemnification includes attorneys' fees and costs. Def.'s Response at 13-14 (citing *N.Y. & Presbyterian Hosp.*, 881 F.3d at 887-88). Specifically, the Government urges the Court to consider a House Report concerning the predecessor statute to section 3102(b); it contends the House Report suggests section 3102(b) was intended to indemnify employers "up to the correct amount withheld and paid to the United States." H.R. Rep. No. 74-615, at 30 (1935); *see* Def.'s Response at 13-14. However, in cases like this one where the statute is unambiguous, it is well-established that "reference to legislative history is inappropriate." *Dep't of Housing & Urban Dev. v. Rucker,* 535 U.S. 125, 132 (2002). Indeed, reference to any legislative history here is unnecessary to the resolution of this Motion.

However, even if this Court were to set aside fundamentals of statutory interpretation and consider such legislative history, the Government's argument would still fail. The Government slices the Federal Circuit's holding too thin and misconstrues the cited legislative history. The Federal Circuit did not elevate statutory purpose above the text; it merely noted that "[t]he

10

legislative history of § 3102(b) *further supports* [its] conclusion that § 3102(b) is reasonably amenable to an interpretation that it is money-mandating." *See N.Y. & Presbyterian Hosp.*, 881 F.3d at 887-88 (emphasis added). The Federal Circuit's examination of the legislative history was an analysis "to determine whether a clear intent contrary to the plain meaning exists," not a holding that the legislative history dictate all future questions regarding section 3102(b). *Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392, 395 (Fed. Cir. 1990). Here, the legislative history cited by the Government does not demonstrate a "clear intent contrary to the plain meaning." *Id.* at 396. As explained below, at most, the legislative history reflects that Congress sought to place a monetary cap on the Government's indemnity obligation. *See infra* pp. 15-17. A monetary cap does not "provide an 'extraordinary showing of contrary intentions'" that would lead this Court to conclude that section 3102(b) excludes attorneys' fees and costs. *Glaxo Operations UK Ltd.*, 894 F.2d at 396.

  B. Awarding Attorneys' Fees Under Section 3102(b) Does Not Conflict with I.R.C. Section 7430

The Government next argues that the Hospital's interpretation of section 3102(b) conflicts with section 7430 of the Internal Revenue Code. Def.'s Response at 31-34. Section 7430 provides, "In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded . . . reasonable litigation costs incurred in connection with such court proceeding." 26 U.S.C. § 7430(a). Section 7430 "was designed to grant attorney's fees 'to a taxpayer who prevails in *any tax case in any Federal court*.'" *Smith v. Brady*, 972 F.2d 1095, 1099 (9th Cir. 1992) (quoting H.R. Conf. Rep. No. 99–841, 99th Cong., 2d Sess., reprinted in 1986 U.S.C.C.A.N. 4075, 4887, 4888 (emphasis added)). When section 7430 applies, it is the exclusive remedy for attorneys' fees. *See id; United States v. McPherson*, 840 F.2d 244, 246 (4th

11

Cir. 1988). Defendant argues that Plaintiff's indemnity action is a tax case, and accordingly that Plaintiff may not obtain litigation costs outside of section 7430. Def.'s Response at 32-33. This case, however, does not implicate section 7430.

First, the facts do not fit within the statute's framework. While the Federal Circuit noted that the Hospital's settlement agreement with the Residents "can be appropriately characterized as a refund for the amount of FICA taxes previously withheld by the Hospital," *N.Y. & Presbyterian Hosp.*, 881 F.3d at 880 (citation omitted), the consolidated actions leading to that settlement were not "brought by or against the United States." 26 U.S.C. § 7430(a). Inversely, while the present case is "against the United States," it is not a case "in connection with the determination, collection, or refund of any tax." *Id.* Instead, it is an indemnity action where the Hospital is asserting its "statutory right to indemnity from the United States pursuant to 26 U.S.C. § 3102(b)." Compl. ¶ 2. As its prerequisites are not met, section 7430 lacks any relevance to the present Motion.

Second, even if this Court were to amalgamate the facts of this case with the facts of the Residents' consolidated class actions to fulfill the requirements of section 7430, section 7430 still would not preclude recovery of attorneys' fees and costs because the Hospital does not seek to recover expenses as a prevailing party in the present case. Section 7430 provides attorneys' fees qua attorneys' fees to litigants who prevail against the Government on a tax issue. *See, e.g.*, *Smith*, 972 F.2d at 1096 (addressing fee award in plaintiffs' suit against the IRS "seeking to have a letter expunged from [the plaintiffs'] files and to prevent the IRS from using such a letter in the future"); *McPherson*, 840 F.2d at 244 (addressing award of attorneys' fees under section 7430 "to an attorney who appeared *pro se* in a tax case in which the government's position was determined to be unreasonable"); *Canada v. United States*, 3:17-cv-2465-S-BN, 2018 WL 4732467, at *2, *22 (N.D. Tex. June 21, 2018) (addressing plaintiff's request for attorneys' fees in connection with

12

"[a] contested matter objecting to the IRS's penalty claim"). Instead, the Hospital seeks to recover attorneys' fees incurred in a separate action that did not involve the Government. Indemnity obligations, such as the Government's under section 3102(b), are distinct from laws authorizing fee shifting of "attorneys' fees qua attorneys' fees." *Noritake Co., Inc. v. M/V Hellenic Champion*, 627 F.2d 724, 730 n. 5 (5th Cir.1980); *see also Sweet v. United States*, 63 Fed. Cl. 591, 599 (2005) (rejecting the Government's reliance on portions of the Price-Anderson Act providing for payment of attorneys' fees where the attorneys' fees at issue were "the attorneys' fees incurred by an indemnitee, as part of the cost of defending claims for public liability"). Accordingly, section 7430 does not alter the Government's stand-alone indemnity obligation under section 3102(b).

### C. The American Rule is Not Implicated

For related reasons, this Court is unpersuaded that the American Rule has any relevance to interpreting section 3102(b). The Government contends that section 3102(b) lacks the "specific and explicit" language required to deviate from the American Rule and award attorneys' fees. Def.'s Response at 15. "The American Rule provides that 'each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.'" *Id.* at 8. (quoting *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015)). The general rule is "that attorney fees are not recoverable in litigation, absent some specific statutory or contractual exception." *Jarvis v. United States*, 45 Fed. Cl. 19, 20 (Fed. Cl. 1999) (citation omitted).

This rule is inapplicable here. As the cases cited by the Government demonstrate, the American Rule governs fee shifting among parties in litigation as opposed to payment under a statutory indemnity provision. *See* Def.'s Response at 15-16; *Baker Botts L.L.P.*, 576 U.S. at 124 (addressing "whether § 330(a)(1) [of the Bankruptcy Code] permits a bankruptcy court to award attorney's fees for work performed in defending a fee application in court"); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 241-43, 245 (1975) (addressing the propriety of attorneys'

13

fees award to environmental organizations in litigation against pipeline company when no statutory basis existed for such an award); *Nantkwest, Inc. v. Iancu*, 898 F.3d 1177, 1186-96 (Fed. Cir. 2018) (addressing whether § 145 of the Patent Act requires patent applicants to pay the U.S. Patent and Trademark Office's attorneys' fees in certain cases), *aff'd sub nom. Peter v. Nantkwest, Inc.*, 140 S. Ct. 365 (2019). The Hospital does not seek to shift fees to the Government because the Hospital prevailed over the Government; it merely seeks to enforce the indemnity provision to the full extent enacted by Congress. Accordingly, this case does not implicate the American Rule.

### D.  The Government is Not Exposed to Unlimited Liability

Finally, the Government warns that the Hospital's interpretation of section 3102(b) could subject the Government to "open-ended" liability. Def.'s Response at 18. According to the Government, interpreting this statute to include attorneys' fees "would be an elephant in a mousehole because it would be an unlimited governmental liability untethered to . . . the actual statute." Tr. at 22:8-11. This Court rejects the Government's contention that such an interpretation would convert the federal fisc into an unsupervised, public piggy bank. That Congress saw fit to authorize "open-ended" liability is unsurprising to this Court, as Congress decided to leave its purse open "permanently and indefinitely" for the payment of judgments in any case approved by this Court. H.R. Rep. No. 95-68, at 184 (1977); *see also* 28 U.S.C. § 2517; S. Rep. No. 95-64, at 173 (1977). In doing so, Congress ended the oversight it maintained over this Court's predecessor for more than 120 years. *See Slattery v. United States*, 635 F.3d 1298, 1301-04 (Fed. Cir. 2011) (reviewing the Tucker Act's history and the progressive diminution of Congress' role in finally deciding claims over the period of 1855-1977). This Court is mindful of the responsibility bestowed upon it by Congress, and scrupulously evaluates claims to ensure that only "legitimate claims against the sovereign" prevail. *Tucker v. United States*, 142 Fed. Cl. 697, 707 (2019). But it is also ultimately this Court's responsibility to ensure that the Government "render[s] prompt

justice against itself" where appropriate. *Id.* Justice in this case means enforcing the plain text of Internal Revenue Code section 3102(b); here, the Government's indemnity obligation includes the Hospital's attorneys' fees and costs.

III. <u>Even if This Court Agreed That the Phrase "Such Payment" Limits the Extent of Indemnity Rather Than Defines "Claims and Demands," the Hospital Would Still be Entitled to Summary Judgment Because the Government's Interpretation at Most Caps the Value of Its Indemnity Obligation</u>

According to the Government, the text of section 3102(b), "in the context of the Federal Circuit's holding," limits the Government's indemnification obligation to "the amount of any *such payment* made by such employer." Def.'s Response at 12 (quoting 26 U.S.C. § 3102(b)) (emphasis in original). Defendant focuses primarily on the Federal Circuit's reference to House Report No. 74-615 in its analysis of whether section 3102(b) is money-mandating. *Id.* at 13-14. Specifically, the Government contends the House Report, as analyzed by the Federal Circuit, "leaves no room for indemnification of amounts outside 'the correct amount of FICA tax withheld and paid to the United States.'" Def.'s Response at 14 (quoting *N.Y. & Presbyterian Hosp.*, 881 F.3d at 888). The Government further reasons that the Hospital cannot recover attorneys' fees here because those fees "could never be properly considered to be included in the correct amount of FICA tax." *Id.* This Court disagrees. To the extent the legislative history of section 3102(b)'s predecessor offers any guidance on the question before this Court, it at most sets a quantitative cap, not a qualitative bar.

The Federal Circuit briefly addressed legislative history after it already concluded, based on exhaustive analysis of the statute's plain language and its relationship to other provisions of the Internal Revenue Code, that section 3102(b) is money mandating. *See N.Y. & Presbyterian Hosp.*, 881 F.3d at 887-88. The parties presented only a single House Report to the Federal Circuit. *Id.* at 887-88. The Report relates to section 802(a) of the Social Security Act, section 3102(b)'s

15

predecessor, and states that an employer, "is indemnified against any *claims and demands* with respect to that part of the wages of the employee which he withheld, up to the correct amount withheld and paid to the United States." H.R. Rep. No. 74-615, at 30 (1935) (emphasis added); *see also N.Y. & Presbyterian Hosp.*, 881 F.3d at 887-88.

The House Report's clear import is that employers may not recover quantitatively more from the Government than the value of the FICA taxes that employer withheld. The House Report's "up to" language is consistent with the implementation of a monetary cap. *See Studio Frames Ltd. v. Standard Fire Ins. Co.*, 483 F.3d 239, 249 (4th Cir. 2007) ("The words "up to a total amount ... of $500,000 for each structure" suggest an aggregate cap on the insurance available on each structure."). Thus, the Federal Circuit concluded that reading "indemnification" in section 3102(b) to mean anything other than the payment of money "would allow an employer to sue for *more than* the correct amount." *N.Y. & Presbyterian Hosp.*, 881 F.3d at 888 (emphasis added). While the Federal Circuit's interpretation of the legislative history suggests in an indemnity suit a party cannot recover *more* than the quantitative amount of FICA tax withheld, it does not place any qualitative limits on what expenses the Government must indemnify if the total amount sought is *less* than the amount of FICA tax withheld.

Here, the Hospital seeks indemnity for a sum far less than the amount of FICA taxes it withheld. *See* Pl.'s Reply at 12. The Hospital withheld from the Residents, and paid to the Government, approximately $9.1 million. *Id.*; Def.'s Response at 33. However, the Hospital only seeks indemnification for approximately $8.3 million — approximately $6.6 million for the settlement funds paid to the Residents and approximately $1.7 million in attorneys' fees and costs incurred in litigating the claims and defenses in the consolidated class actions. Def.'s Resp. at 26 (noting the Residents alleged that "the total FICA tax withheld from the class [R]esidents during

16

the class period was approximately $9.1 million"); *N.Y. & Presbyterian Hosp.*, 152 Fed. Cl. at 513 (noting the Hospital paid $6,632,000.00 to settle Residents' claims); Pl.'s Mot. at 10 (seeking $1,703,582.02 in attorneys' fees and costs). Thus, as the Hospital is seeking nearly $800,000 less than any such monetary cap that the Government contends exists, the Hospital does not seek "more than the correct amount." *N.Y. & Presbyterian Hosp.*, 881 F.3d at 888.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment (ECF No. 78). The parties are **ORDERED** to (1) **FILE** a Joint Notice **by August 12, 2022**, attaching a proposed public version of this Sealed Memorandum and Order, with any competition-sensitive or otherwise protected information redacted; and (2) **FILE within 30 days** of this Sealed Memorandum and Order a Joint Status Report indicating whether they consent to a value of judgment or, if the parties do not reach agreement, providing a schedule for future proceedings.

IT IS SO ORDERED.



*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

August 5, 2022
Washington, D.C.